**NORMANDY POINTE ASSOCIATES, Plaintiff,**

v.

**FEDERAL EMERGENCY MANAGEMENT AGENCY, et al., Defendants.**

No. C–3–99–041.

United States District Court, S.D. Ohio, Western Division.

March 16, 2000.

Laura A. Hauser, Peter D. Welin, Columbus, OH, for Plaintiffs.

Pamela M. Stanek, Daytona, OH, Thomas W. Hill, O. Judson Scheaf, Columbus, OH, James J. Englert, Leonard A. Weakley, Cincinnati, CT, Gregory P. Dunsky, Robert J. Surdyk, Dayton, OH, for Defendants.

**DECISION AND ENTRY SUSTAINING MOTION TO DISMISS (DOC. # 11) FILED BY DEFENDANT DEWBERRY & DAVIS; UNOPPOSED MOTION TO DISMISS (DOC. # 22) FILED BY DEFENDANT FEDERAL EMERGENCY MANAGEMENT AGENCY SUSTAINED; JUDGMENT TO BE ENTERED IN FAVOR OF DEFENDANTS AND AGAINST PLAINTIFF, DISMISSING LITIGATION FOR WANT OF SUBJECT MATTER JURISDICTION, WITHOUT PREJUDICE TO ASSERTION OF STATE–LAW CLAIMS AGAINST DEFENDANTS OTHER THAN DEFENDANT FEDERAL EMERGENCY MANAGEMENT AGENCY IN STATE COURT OF COMPETENT JURISDICTION; TERMINATION ENTRY**

RICE, Chief Judge.

This litigation stems from a dispute over the location of a 100–year floodplain which runs through a housing development owned by Plaintiff Normandy Point Associates ("Normandy"). In its Complaint, Normandy contends that "uncertainty regarding flooding" has rendered it unable to sell lots in its "Hidden Creek" residential development. Normandy also alleges that the existence of conflicting floodplain delineations poses a potential threat to property and to individuals located near the Little Sugar Creek, which runs through the Hidden Creek development. (*Id.* at ¶ 37, 40).

The Defendants in this action include the Federal Emergency Management Agency ("FEMA"); Dewberry & Davis ("Dewberry"); Woolpert Consultants ("Woolpert"); the Board of Commissioners for Montgomery County, Ohio; the Board of Trustees for Washington Township, Ohio; and five individuals, Bruce E. Davidson, James J. Dobrowski, Douglas W. Betz, Michael R. Flannery and Patrick J. Moone. FEMA is a federal agency with the statutory responsibility for delineating floodplains. (*Id.* at ¶ 4). Dewberry is an engineering firm which allegedly has assisted FEMA with the delineation of a 100–year floodplain for the Little Sugar Creek. (*Id.* at ¶ 5, 22). Woolpert is an engineering firm which allegedly entered into a contract with Normandy to determine the proper 100–year floodplain for the portion of the Little Sugar Creek which runs through the Hidden Creek housing development. (*Id.* at ¶ 2, 15, 16). The Montgomery County Board of Commissioners and the Washington Township Board of Trustees are the governmental entities which serve the geographical area where the Hidden Creek development is located. (*Id.* at ¶ 6, 7). The individual Defendants are Woolpert employees and general partners who allegedly participated in delineating the floodplain for Normandy. (*Id.* at ¶ 3).

In its one-count Complaint, Normandy alleges that five different delineations of the 100–year floodplain currently exist. As a result, it seeks a declaratory judg-

ment regarding the proper location of the Little Sugar Creek floodplain, insofar as it passes through the Hidden Creek housing development. (*Id.* at ¶ 42—43). Normandy alleges that the Court possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, which provides for "federal question" jurisdiction, and 28 U.S.C. § 2201–2202, the Declaratory Judgment Act. Pending before the Court are two Motions: (1) a Motion to Dismiss (Doc. # 11) filed by Dewberry; and (2) an unopposed Motion to Dismiss (Doc. # 22) filed by FEMA.

## I.  *Factual Background* [1]

Normandy hired Woolpert in 1989 to perform various work in connection with its construction of the Hidden Creek housing development. (Doc. # 1 at ¶ 13). Woolpert's work included delineating a 100–year floodplain on drawings submitted to, and approved by, the Montgomery County Board of Commissioners and the Washington Township Board of Trustees. (*Id.* at ¶ 15). Woolpert's ability to delineate the floodplain accurately was crucial because a portion of the Little Sugar Creek flows through the Hidden Creek development. (*Id.* at ¶ 16).

Woolpert employee Michael Flannery assumed responsibility for delineating the floodplain, even though he had no prior experience doing so. (*Id.* at ¶ 17). When performing his work, Flannery elected not to rely upon an existing FEMA floodplain delineation, which had a margin of error of plus or minus ten feet. (*Id.* at ¶ 18–19). His final delineation of the floodplain differed significantly from a delineation provided by FEMA in a "Flood Insurance Rate Map" ("FIRM"). (*Id.* at ¶ 21). The delineation of the 100–year floodplain contained in the FEMA FIRM extended several feet from the banks of the Little Sugar Creek, whereas Flannery's delineation followed its banks. (*Id.* at ¶ 23). The delineation in the FIRM was based upon

engineering work provided to the agency by Dewberry. (*Id.* at ¶ 22).

Woolpert ultimately incorporated Flannery's delineation of the 100–year floodplain into its work for Normandy, without informing anyone that his calculations differed significantly from FEMA's. (*Id.* at ¶ 24). Shortly thereafter, home owners constructed homes outside of Woolpert's 100–year floodplain delineation but within FEMA's delineation. (*Id.* at ¶ 25). The homes then flooded several times after weather events of less than "100–year severity." (*Id.* at ¶ 26). The accuracy of Woolpert's work was first challenged in early 1995, when a Hidden Creek home builder questioned the position of the 100–year floodplain. (*Id.* at ¶ 27). Woolpert assured the builder that its delineation was accurate. (*Id.*). In August, 1995, a lender also questioned the location of Woolpert's 100–year floodplain, noting that it differed from the delineation in FEMA's FIRM. (*Id.* at ¶ 29). Until that time, Normandy had been unaware that Woolpert's delineation differed from FEMA's. (*Id.*) In response to the lender's concerns, Woolpert assured Normandy that its delineation was "more accurate" than FEMA's. (*Id.*).

Woolpert then recommended that Normandy pay it to perform a flood study of the Little Sugar Creek to confirm the accuracy of Flannery's delineation. (*Id.*). Although Normandy paid Woolpert to conduct such a study, the company did not do so. Instead, it simply relied on topographical data that it had obtained in 1990. (*Id.* at ¶ 31). Thereafter, Woolpert submitted a "Letter of Map Revision" to FEMA, seeking a change in the agency's official delineation of the 100–year floodplain. (*Id.* at ¶ 32). Woolpert sought to have FEMA's delineation changed to match the delineation used by Flannery in his prior work for Normandy. (*Id.* at ¶ 32).

Near that time, the Washington Township Board of Trustees commissioned a

---

1. For purposes of ruling on the pending Motions to Dismiss, the Court will accept as true the factual allegations contained in Norman-

dy's Complaint. *See RMI Titanium Co. v. Westinghouse Electric Corp.*, 78 F.3d 1125, 1134 (6th Cir.1996).

company known as Water Resources & Costal Engineering, Inc. ("Water Resources"), to prepare a floodplain evaluation of the Little Sugar Creek, including the portion that runs through the Hidden Creek development. (*Id.* at ¶ 33). Water Resources determined that flood elevations along the Little Sugar Creek may be several feet higher than previously reported by FEMA or Woolpert. (*Id.* at ¶ 34). A number of homes are within the boundaries of the 100–year floodplain delineated by Water Resources. (*Id.*). The Washington Township Board of Trustees shared this information with Woolpert and the Montgomery ·County Board of Commissioners before FEMA had modified its official delineation, based on Woolpert's Letter of Map Revision. (*Id.* at ¶ 35). Nevertheless, no one informed FEMA that Water Resources' calculations conflicted with those contained in Woolpert's letter requesting a change in the agency's official 100–year floodplain delineation. (*Id.*). Woolpert failed to notify FEMA because it hoped to avoid civil liability for its prior error in locating the floodplain. (*Id.*).

Thereafter, a 1997 Woolpert study of the Little Sugar Creek indicated that Flannery's delineation and the computations contained in Woolpert's Letter of Map Revision to FEMA were both inaccurate. (*Id.* at ¶ 36). According to this new study, at least seven homes and thirteen additional Hidden Creek lots are within the 100–year floodplain. (*Id.*). Woolpert's 1997 delineation is substantially similar to Water Resources' study. (*Id.*).

As a result of "uncertainty regarding the flooding," Normandy has been unable to sell lots in Hidden Creek. (*Id.* at ¶ 37). In addition, several home owners in the development have filed state-court actions against Normandy, Woolpert and others. (*Id.* at ¶ 38). During the course of·that litigation, the parties to this action have claimed differing 100–year floodplain delineations. (*Id.*). At least five such delineations currently exist: (1) the delineation contained in FEMA's pre–1990 FIRM; (2) Flannery's 1989–1990 delineation for Woolpert, at the request of Normandy; (3) the delineation contained in Woolpert's 1995 Letter of Map Revision to FEMA; (4) Water Resources' delineation; and (5) Woolpert's 1997 delineation. (*Id.* at ¶ 39). In light of the uncertainty regarding the proper location of the 100–year floodplain, there exists a threat to property and citizens located near the Little Sugar Creek. (*Id.* at ¶ 40). As a result, Normandy asks the Court to "examine the information and claims of the various parties concerning the proper location of the 100–year floodplain," and to provide "a judicial determination" of the same. (*Id.* at ¶ 42–43).

## II. *Analysis of Unopposed Motion to Dismiss filed by FEMA (Doc. # 22)*

█ In its Motion to Dismiss, FEMA argues that the Court lacks subject matter jurisdiction over this action and that Normandy has failed to state a claim upon which relief can be granted. Upon review, the Court finds FEMA's Motion to be persuasive. It is well established that the United States and its agencies enjoy sovereign immunity, except to the extent that such immunity is waived. Therefore, " 'the terms of [FEMA's] consent to be sued in any court define that court's jurisdiction to entertain the suit.' " *Campanella v. Commerce Exchange Bank,* 137 F.3d 885, 890 (6th Cir.1998), quoting *A & S Council Oil Co. v. Lader,* 56 F.3d 234, 238 (D.C.Cir.1995).

█ In the present case, Normandy alleges that the Court possesses subject matter jurisdiction pursuant to 28 U.S.C. § 1331, which provides it with original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." Normandy also alleges that the Court possesses subject matter jurisdiction pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201–2202. Neither of the foregoing statutes provides a waiver of FEMA's sovereign immunity. In *Whittle v. United States,* 7 F.3d 1259, 1262 (6th Cir.1993), the court recognized that 28 U.S.C. § 1331 "is not a general

waiver of sovereign immunity; it merely establishes a subject matter that is within the competence of federal courts to entertain." Likewise, the Declaratory Judgment Act neither provides an independent basis for subject matter jurisdiction nor waives FEMA's sovereign immunity. The Act merely grants the Court the power to issue declaratory judgments when jurisdiction otherwise exists. *Skelly Oil v. Phillips Petroleum Co.*, 339 U.S. 667, 671–672, 70 S.Ct. 876, 94 L.Ed. 1194 (1950).

The only other statute cited in Normandy's Complaint is the National Flood Insurance Act ("NFIA"), 42 U.S.C. § 4001, *et seq.* This legislation does not include a broad waiver of FEMA's sovereign immunity. *See Sandia Oil Co. v. Beckton*, 889 F.2d 258, 262 (10th Cir.1989) ("FEMA does not have a statutory provision allowing the agency to sue and be sued generally in relation to the flood insurance program."). Rather, NFIA provides two limited waivers of sovereign immunity. *First*, NFIA waives sovereign immunity for challenges to the agency's disallowance of flood insurance claims. 42 U.S.C. § 4072; *see also Sandia Oil Co.*, 889 F.2d at 262 ("Section 4072 limits a claimant's ability to sue on a flood insurance policy. Insurance claims must initially be submitted to the Director of FEMA. After total or partial disallowance of a claim, the claimant has one year to file an action."). *Second*, the Act contains an administrative review process which allows aggrieved parties to contest "flood elevation determinations." 42 U.S.C. § 4104. Individuals who are dissatisfied with the results of that administrative process may file suit in district court within sixty days after a "Notice of Final Determination." 44 C.F.R. § 67.12.

■ Normandy's Complaint does not involve the denial of a flood insurance claim. Consequently, the waiver of sovereign immunity provided in 42 U.S.C. § 4027 does not apply. By asking the Court to determine which of five existing floodplain delineations is correct, however, Normandy at least arguably challenges FEMA's "projected flood elevations for land use purposes with respect to any community[.]" *See* 42 U.S.C. § 4104(a). Although NFIA authorizes judicial review of such agency determinations, the statute requires aggrieved parties first to utilize an administrative review process. *See* 42 U.S.C. § 4104(g) ("Any appellant aggrieved by any final determination of the Director upon administrative appeal, as provided in this section, may appeal such determination to the United States district court for the district within which the community is located not more than sixty days after receipt of notice of such determination."); *see also City of Trenton v. Federal Emergency Management Agency*, 545 F.Supp. 13, 15–16 (E.D.Mich.1981) (finding no subject matter jurisdiction over action challenging FEMA's final flood elevation determination when suit was not filed until six months after administrative decision); *City of Biloxi v. Giuffrida*, 608 F.Supp. 927 (S.D.Miss.1985) (concluding that no subject matter jurisdiction existed to review FEMA's base flood elevation determinations when plaintiff failed to comply with statutory requirements).

Although Normandy has not responded to FEMA's Motion to Dismiss, it admits, in response to Dewberry's Motion, that it has never sought administrative review of FEMA's floodplain determination. It argues, however, that it was not required to seek administrative review, given the circumstances of this case. In particular, Normandy contends that it had no reason to challenge FEMA's 1995 decision to modify its official delineation in response to Woolpert's "Letter of Map Revision."[2] Normandy also notes that it was "initially

---

**2.** As noted, *supra*, Normandy contends that Woolpert's Letter of Map Revision persuaded FEMA to revise the 100–year floodplain to follow the delineation which Michael Flannery originally provided for Normandy. According to Normandy, Woolpert approached FEMA about making the revision in order to help avoid liability for Flannery's erroneous 1989–1990 calculations. (Doc. # 1 at ¶ 32, 35).

pleased with FEMA's acceptance of Woolpert's [letter]...." (Doc. #14 at 11). Normandy contends that it did not discover certain inaccurate data in Woolpert's Letter of Map Revision until much later, after Water Resources conducted its own floodplain study on behalf of Washington Township. Furthermore, Normandy contends that it lacked possession of the scientific data necessary to challenge FEMA's floodplain determination. (*Id.* at 12). Consequently, it argues that it could not possibly have challenged FEMA's delineation within the time limit set forth in 42 U.S.C. § 4104. (*Id.* at 12). As a result, it alleges that the present lawsuit is its only recourse. (*Id.* at 11).

■ The Court finds Normandy's argument unpersuasive. The fact that it might have been mislead by Woolpert regarding the accuracy of data provide to FEMA in a Letter of Map Revision does not permit the Court to overlook Normandy's failure to pursue administrative relief. By enacting 42 U.S.C. § 4104, Congress provided a limited waiver of sovereign immunity in disputes regarding FEMA floodplain determinations. As set forth above, the statute indicates that district courts may review final agency actions after exhaustion of administrative remedies. All such waivers of sovereign immunity must be strictly construed in favor of the government. *United States v. Tennessee Air Pollution Control Board,* 185 F.3d 529, 531 (6th Cir. 1999); *State Bank of Coloma v. National Flood Ins. Program,* 851 F.2d 817, 820 (6th Cir.1988) ("We note that in cases where the federal government has consented to suit, courts must construe waivers strictly in favor of the sovereign and not enlarge the waiver beyond what the language requires."); *Lehman v. Nakshian,* 453 U.S. 156, 161, 101 S.Ct. 2698, 69 L.Ed.2d 548 (1981) ("[L]imitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied."). Regardless of the reason, Normandy has not met the terms and conditions of the government's waiver of sovereign immunity.[3] As a result, the Court lacks subject matter jurisdiction over this action, insofar as it involves a challenge to FEMA's floodplain delineation.[4]

Even assuming, arguendo, that Normandy's declaratory judgment action against

3. Normandy has not identified any waiver of sovereign immunity that would be applicable to its request for a declaration regarding the location of the 100–year floodplain. The only conceivable basis for a waiver of FEMA's sovereign immunity, other than the two narrow statutory waivers discussed above, is the Administrative Procedure Act. Section 702 of the Act provides a basis for jurisdiction over a declaratory judgment claim under certain circumstances. In the present case, however, Normandy has not invoked the APA as a basis for jurisdiction. Therefore, the Court need not explore its potential applicability. *Cf. Local 3–689, Oil, Chemical & Atomic International Union v. Martin Marietta Energy Systems, Inc.,* 77 F.3d 131, 138 (6th Cir.1996) (declining to address the APA's waiver of sovereign immunity when it was not raised by the plaintiff before the district court); *Lumarse, Inc. v. Dept. of Health and Human Services,* 191 F.3d 460, 1999 WL 644355 (9th Cir. Aug. 24, 1999) (refusing to review a possible waiver of sovereign immunity under the APA when plaintiff failed to raise the issue before the district court).

4. The Court's dismissal of this action does not leave Normandy without a remedy. Normandy's statutory remedy is to persuade a state or local government official to approach FEMA about revising its official 100–year floodplain for the Hidden Creek area, pursuant to 42 U.S.C. § 4101(f), which provides:

> The Director shall revise and update any floodplain areas and flood-risk zones—
> (1) upon the determination of the Director, according to the assessment under subsection (e) of this section, that revision and updating are necessary for the areas or zones; or
> (2) upon the request from any State or local government stating that specific floodplain areas or flood-risk zones in the State or locality need revision or updating, if sufficient technical data justifying the request is submitted and the unit of government making the decision agrees to provide funds in an amount determined by the Director, but which may not exceed 50 percent of the cost of carrying out the requested revision or update.

FEMA is not barred by sovereign immunity, the Court finds the action subject to dismissal for a second reason—Normandy has not established standing to bring this action against *any* of the Defendants.

The irreducible constitutional minimum of standing contains three requirements. First, and foremost, there must be alleged (and ultimately proven) an injury in fact—a harm suffered by the plaintiff that is concrete and actual or imminent, not conjectural or hypothetical. Second, there must be causation—a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant. And third, there must be redressability—a likelihood that the requested relief will redress the alleged injury. This triad of injury in fact, causation, and redressability comprises the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence.

*Cutshall v. Sundquist,* 193 F.3d 466, 471 (6th Cir.1999), quoting *Steel Company v. Citizens for a Better Environment,* 523 U.S. 83, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (internal quotation marks, citations, and footnote omitted).

■ With respect to the first requirement, an injury in fact, a review of Normandy's Complaint reveals two possible injuries: (1) its inability to sell homes in the Hidden Creek development due to "uncertainty regarding flooding" (Doc. # 1 at ¶ 37); and (2) the existence of state-court litigation against it (*Id.* at ¶ 38). The Court concludes that both types of harm are "concrete" and "actual," as opposed to speculative or conjectural. Consequently, the first element of the three-part standing test is satisfied. For present purposes, the Court also will assume, arguendo, that the injuries to Normandy are traceable to one or more of the Defendants.[5] The final requirement, redressability, is more problematic for Normandy.

■ Neither Normandy's Complaint nor its Memorandum demonstrates that any injury to it will be redressed by a declaratory judgment from the Court. To the extent that the five conflicting delineations have caused "uncertainty regarding flooding," a ruling by the Court would simply add a sixth opinion to the mix. Although Normandy asks the Court to determine the "actual" floodplain, a declaratory judgment on the matter likely would do little to settle the nerves of prospective or current residents of Hidden Creek. Opinions on the delineation issue obviously vary. While the Court conceivably could review the competing delineations and give one the imprimatur of judicial approval, only time and Mother Nature will tell where the "actual" floodplain lies. In short, any suggestion that a declaratory judgment on this issue will relieve "uncertainty regarding flooding" is unconvincing.[6]

Likewise, to the extent that Normandy has been injured by on-going state-court litigation, a declaratory judgment by the

5. Parenthetically, however, the Court notes that Normandy's injuries do not appear to be traceable to FEMA. Prior to 1995, Normandy relied upon Flannery's floodplain determination, which he developed *in conflict* with FEMA's more conservative delineation. Consequently, to the extent that Normandy has been sued because homes flooded after being built in reliance upon Flannery's work, any resulting injury is attributable to Woolpert, not FEMA. Likewise, any "uncertainty regarding flooding" is not attributable to FEMA, even if such uncertainty has prevented Normandy from marketing homes in its development. In its Memorandum, Normandy admits that FEMA *has* established an "official delineation" of the floodplain. (Doc.

# 14 at 4). Any "uncertainty regarding flooding" stems from the fact that several conflicting delineations have been rendered by others and, apparently, publicized to actual or potential Hidden Creek home owners—a circumstance for which FEMA bears no responsibility. Consequently, Normandy has not established an "injury" that is traceable to FEMA.

6. The uncertainty no doubt stems in part from the fact that several homes in the Hidden Creek area already have flooded. Regardless of where the Court might place the debated 100–year floodplain, the uncertainty caused by the *fact* of such flooding would continue unabated.

Court cannot redress the injury. As an initial matter, the Court notes that the location of the 100–year floodplain appears to be at issue in the pending state-court actions. In its Memorandum, Normandy states that the proper delineation of the floodplain *is not* at issue in the state-court litigation. (Doc. # 14 at 8). In its Complaint, however, Normandy acknowledges that "[d]uring the course of the state[-]court litigation, the parties to this litigation have claimed differing 100–year floodplain delineations. At least five different delineations of the 100–year floodplain currently exist[.]" (Doc. # 1 at ¶ 39). If Normandy and Woolpert have been sued by the owners of flooded homes, it is inconceivable that the location of the 100–year floodplain is not at issue in the state-court actions. Consequently, the Court accepts, for present purposes, the representation in Normandy's Complaint that the floodplain location *is* at issue in the pending lawsuits against it and Woolpert.

Even so, a declaratory judgment determining the "true" location of the floodplain would not assist Normandy or redress any "injury" to it as a result of the lawsuits brought by unhappy residents of Hidden Creek. The home owners are not parties to this action, and a ruling by this Court regarding the "true" delineation of the 100–year floodplain would have no legal effect in the state-court litigation. In other words, collateral estoppel would not preclude the home owners from re-litigating the proper location of the floodplain, regardless of this Court's ruling on the issue. *See State v. Williams,* 76 Ohio St.3d 290, 667 N.E.2d 932 (1996), citing *Hicks v. De La Cruz,* 52 Ohio St.2d 71, 369 N.E.2d 776 (1977) (Emphasis added) ("The doctrine of collateral estoppel, or, more correctly, issue preclusion, precludes further action on an identical issue that has been actually litigated and determined by a valid and final judgment as part of a prior action *among the same parties or those in privity with those parties.*"); *New*

*Winchester Gardens, Ltd. v. Franklin County Board of Revision,* 80 Ohio St.3d 36, 684 N.E.2d 312, 316 (1997) (noting that collateral estoppel applies "when the party against whom collateral estoppel is asserted was a party in privity with a party to the prior action"). For the foregoing reasons, the Court concludes that Normandy has not established standing to pursue its declaratory judgment action. As no ruling by the Court could redress any injury to Normandy, the Court lacks subject matter jurisdiction over this action.[7] *Cutshall,* 193 F.3d at 471. Therefore, FEMA's unopposed Motion to Dismiss (Doc. # 22) will be sustained for this alternative reason as well.

### III. *Analysis of Motion to Dismiss Filed by Dewberry & Davis (Doc. # 11)*

In its Motion to Dismiss, Dewberry also questions the Court's subject matter jurisdiction to hear this action. It contends that no subject matter jurisdiction exists for two reasons: (1) there is no "case or controversy" between Normandy and Dewberry; and (2) Normandy's Complaint raises no "federal question." Dewberry also argues that the Court cannot exercise personal jurisdiction over it consistent with Ohio's "long-arm" statute and the requirements of federal due process. As a result, Dewberry asks the Court either to dismiss Normandy's Complaint in its entirely or, alternatively, to dismiss Dewberry as a party to this litigation. In response, Normandy insists that a justiciable "case or controversy" exists under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.* Normandy also argues that its Complaint raises a federal question over which the Court possesses subject matter jurisdiction. Finally, it contends that the Court may exercise personal jurisdiction over Dewberry.

For the reasons to follow, the Court concludes that it is without subject matter jurisdiction over this action, because no

---

7. Given this conclusion, the Court need not address FEMA's alternative argument that the

Normandy's Complaint fails to state a claim upon which relief may be granted.

"case or controversy" exists between Normandy and Dewberry. In addition, the Court has found FEMA immune from suit, and no conceivable federal question exists as to Normandy's request for a declaratory judgment against the remaining Defendants. The National Flood Insurance Act, which is the only possible basis cited by Normandy for invoking the Court's "federal question" jurisdiction, has no applicability to any Defendants other than FEMA.

### A. No "Case or Controversy" Between Normandy and Dewberry

"When a 12(b)(1) motion attacks the face of a complaint, the plaintiff's burden to prove federal question subject matter jurisdiction is not onerous." *RMI Titanium Co. v. Westinghouse Elec. Corp.,* 78 F.3d 1125, 1134 (6th Cir.1996). In the present case, however, Normandy's Complaint does not reveal the existence of a justiciable "case or controversy" involving Dewberry. The Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.,* authorizes the Court to resolve an "actual controversy" to "declare the legal rights and other legal relations of any interested party seeking such declaration...." Similarly, the U.S. Constitution grants the Court the power to resolve a "case or controversy." U.S. Const. Art. III, Sec. 2. The Supreme Court explored the nature of a justiciable "controversy," in the context of the Declaratory Judgment Act, in *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937), stating:

> The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests.... It must be a real and substantive controversy admitting of specific relief through a decree of a conclusive character....Where there is such a concrete case admitting of an immediate

and definitive determination of the legal rights of the parties in an adversary proceeding upon the facts alleged, the judicial function may be appropriately exercised although the adjudication of the rights of the litigants and may not require the award of process or the payment of damages.

*Id.* at 240–241, 57 S.Ct. 461 (citations omitted).

In its Complaint, Normandy does not seek a determination of any legal rights vis-a-vis Dewberry. Rather, it seeks a declaratory judgment from the Court determining "the actual 100–year floodplain for the Hidden Creek area and such additional relief as is equitable and just." (Doc. # 1 at 11). In short, Normandy asks the Court to determine which of five possible floodplain delineations is the "right" one. Any controversy regarding the proper location of the floodplain, however, does not "touch the legal relations" between Normandy and Dewberry. Normandy has identified no dispute involving itself and Dewberry which could be resolved through a declaratory judgment by the Court.

In its Complaint, Normandy alleges that Dewberry has provided engineering services to FEMA, in connection with *the agency's* official delineation of the floodplain around the Hidden Creek development. Even assuming, arguendo, that FEMA's delineation is inaccurate, and that such inaccuracy is attributable to Dewberry's work, a ruling by the Court regarding the proper location of the floodplain would have no effect on Dewberry whatsoever.

As Dewberry properly notes, courts have "consistently held that no private cause of action exists for breach of duty by a governmental contractor for violation of the underlying agency's statutory duties." *Segall v. Rapkin,* 875 F.Supp. 240, 241 (S.D.N.Y.1995) (citing cases).[8] In re-

---

8. The *Segall* court recognized that NFIA does not provide an implied private right of action against a FEMA contractor for damages due to flooding which allegedly resulted from the contractor's negligent work. *Segall,* 875 F.Supp. at 241. Therefore, even if Dewberry performed its work for FEMA in a negligent

manner, Normandy has no viable cause of action against it under the statute. Parenthetically, the Court also notes the absence of any privity of contract between Normandy and Dewberry (as opposed to FEMA and Dewberry).

sponse to this assertion, Normandy stresses that *Segall* involved an action for damages, whereas it seeks declaratory relief. Normandy argues that the Court may order "FEMA, and all those involved" in the delineation process to "fulfill their respective obligations" under 42 U.S.C. § 4101(a), which authorizes the Director of FEMA "to consult with, receive information from ... or enter into contracts with any persons or private firms, in order that he may—"

    (1) Identify and publish information with respect to all floodplain areas, ... and,

    (2) Establish or update flood-risk zone data in all such areas ...

42 U.S.C. § 4101(a).

Upon review, the Court finds Normandy's argument unpersuasive. As an initial matter, the Court notes a shift in the relief sought by Normandy. In its Complaint, Normandy asks the Court "to enter a declaratory judgment and determine the actual 100–year floodplain for the Hidden Creek area[.]" (Doc. # 1 at 11). In its Memorandum, however, Normandy suggests that the Court might order FEMA and Dewberry to fulfill their statutory obligations to establish a "final, binding floodplain delineation." (*Id.* at 1). Regardless of the nature of the relief sought by Normandy, the Court discerns no "case or controversy" between it and Dewberry.

As Normandy concedes in its Memorandum, FEMA *has* established a 100–year floodplain delineation. (Doc. # 1 at 4). Normandy recognizes that FEMA's 1995 delineation "is presently the official designation." (*Id.* at 8). As set forth more fully above, Normandy's argument is that uncertainty exists because Woolpert and others have proposed delineations which conflict with FEMA's.[9] Nevertheless, the Court cannot issue a declaratory judgment requiring *Dewberry* to fulfill its "statutory

obligation" and to establish the "true" 100–year floodplain for the Hidden Creek area. The statutory language cited by Normandy imposes upon *FEMA* an obligation to make floodplain determinations. FEMA simply hired Dewberry to perform engineering work for the agency. Even assuming, arguendo, that FEMA has failed to perform a statutory duty, Dewberry has no statutory obligation to do anything. If Normandy cannot obtain damages from Dewberry (*see Segall, supra*), as it implicitly concedes, and if the Court cannot order Dewberry to fulfill any statutory duty with respect to floodplain delineation, then no "case or controversy" exists between Dewberry and Normandy. Consequently, the Court is unpersuaded that a declaratory judgment would provide "an immediate and definitive determination" of any legal rights between Normandy and Dewberry. *Cf. Haworth,* 300 U.S. at 240–241, 57 S.Ct. 461. To the contrary, neither a judicial declaration regarding the "proper" delineation of the floodplain, nor an order directing FEMA to fulfill its "statutory obligation," would involve Dewberry.

### B. No "Federal Question" Jurisdiction

    As set forth, *supra,* Normandy's Complaint alleges that the Court possesses jurisdiction over this action pursuant to 28 U.S.C. § 1331, which provides it with original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States," and 28 U.S.C. § 2201–2202, the Declaratory Judgment Act. Neither statute, however, provides a substantive basis for subject matter jurisdiction. Section 1331 "merely establishes a subject matter [i.e., "federal questions"] that is within the competence of federal courts to entertain." *Whittle,* 7 F.3d at 1262. Likewise, the Declaratory Judgment Act does not provide a basis for

---

9. The Court has recognized, however, that federal law provides two avenues to challenge FEMA's flood elevation determinations. *First,* a party who is adversely affected by the agency's determinations may pursue administrative relief and then commence litigation in federal court after receiving a final decision by the Director of FEMA. *See* 44 C.F.R. Part 67. *Second,* a party may prevail upon a state or local government to seek a revision of FEMA's floodplain determinations. *See* 42 U.S.C. § 4101(f).

subject matter jurisdiction. Rather, it gives the Court the power to issue declaratory judgments when jurisdiction otherwise exists. *Skelly Oil*, 339 U.S. at 671–672, 70 S.Ct. 876. The only possible substantive basis for "federal question" jurisdiction is the National Flood Insurance Act, 42 U.S.C. § 4001, *et seq.*, which is the only other statute cited in Normandy's Complaint. (Doc. # 1 at ¶ 4). As noted, *supra*, the portion of the Act relied upon by Normandy authorizes *the Director of FEMA* to establish and update floodplains. *See e.g.*, 42 U.S.C. § 4101(a). Nothing in the language relied upon by Normandy has any conceivable applicability to the other Defendants. In short, Normandy's Complaint does not allege any "substantial" claim under federal law against any Defendant other than (possibly) FEMA, which has been dismissed as a party to this litigation.[10] *See Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1248 (6th Cir.1996). Absent such a claim against the remaining Defendants, no "federal question" jurisdiction exists. Accordingly, Dewberry's Motion to Dismiss (Doc. # 11) will be sustained for that reason as well.[11]

The Court will dismiss this action in its entirety for lack of subject matter jurisdiction, without prejudice to renewal in state court, because the absence of a federal question precludes Normandy from maintaining suit in this forum against *any* of the non-FEMA Defendants.[12]

### IV. *Conclusion*

Based upon the reasoning and citation of authority set forth above, the Motion to Dismiss (Doc. # 11) filed by Defendant Dewberry & Davis is sustained. The unopposed Motion to Dismiss (Doc. # 22) filed by the Federal Emergency Management Agency is sustained.

Judgment will be entered in favor of the Defendants and against the Plaintiff, dismissing this litigation for want of subject matter jurisdiction, without prejudice to the assertion of state-law claims against Defendants other than FEMA in a state court of competent jurisdiction.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

---

10. "A federal claim is "substantial" unless it is "frivolous."" *Musson*, 89 F.3d at 1248. In the present case, however, the Court cannot discern *any* federal claim against the remaining Defendants, frivolous or otherwise.

11. Assuming, purely arguendo, that Normandy's Complaint presents a colorable enough federal claim against the remaining Defendants to provide the Court with "federal question" jurisdiction, the Court finds persuasive Dewberry's alternative argument that the Complaint fails to state a claim upon which relief can be granted.

12. For the reasons set forth above, the Court concludes that the Plaintiff's Complaint does not assert a colorable federal claim against any of the non-FEMA Defendants. In fact, the Court has concluded that the Plaintiff has failed to state any claim at all. Even if the Complaint could be construed as asserting state-law claims against the non-FEMA Defendants, however, the Court could not exercise "supplemental jurisdiction" over such claims, because it has dismissed this action against FEMA pursuant to Rule 12(b)(1). Under such circumstances, supplemental jurisdiction "can *never* exist." *Musson*, 89 F.3d at 1255.