OPINION
This matter is before us on Ronald Brady's appeal from a trial court decision rejecting his request for modification of accrued support obligations. In support of his appeal, Brady raises the following assignments of error:
I. The trial court erred to the prejudice of the Appellant in citing the doctrine of res judicata as it's [sic] substantiation for dismissing the current matter.
II. The trial court erred to the prejudice of the Appellant in failing to dismiss the arrearage in total.
III. The trial court erred to the prejudice of the Appellant in failing to issue a refund for the amount of overpayment of support.
IV. The trial court erred to the prejudice of the Appellant in assigning court costs only to the Appellant.
After reviewing the record and applicable law, we find the assignments of error without merit and affirm the judgment of the trial court. A brief explanation of our decision follows.
 I
This is the fourth time we have considered an appeal from Mr. Brady regarding support obligations that were ordered in the divorce action with his ex-wife, Brenda. See Brady v. Brady (Oct. 27, 1995), Montgomery App. No. 15082, unreported (Brady I); Brady v. Brady (May 31, 1996), Montgomery App. No. 15725, unreported (Brady II); and Brady v. Brady
(June 6, 1997), Montgomery App. No. 16213, unreported (Brady III). All these appeals have focused on Mr. Brady's support obligation for the three children of the marriage.
A complete recitation of the facts may be found in our prior opinions. The shorter story, for purposes of this appeal, is that Mr. and Ms. Brady were divorced in April, 1985. At that time, Mr. Brady agreed to pay child support of $50 per week per child, for a total obligation of $150 per week. This amount was reduced by agreement on two occasions (in 1987 and 1988) to an ultimate total of $51 per week. Subsequently, in 1992, after an administrative modification review and administrative hearing, income was imputed to Mr. Brady based on voluntary unemployment. His support obligation was then increased to $781.80 per month. An arrearage of $7,029.80 was also established at that time. Brady I, 1995 WL 628025, p. 1.
Mr. Brady did not appeal from the 1992 support decision, nor did he file any motions under Civ.R. 60. In early 1994, support was reduced pursuant to another administrative modification review to $214.12 per month. An arrearage was also established, as of April 10, 1994, in the amount of $17,069.23. At that time, Mr. Brady did appeal, arguing that the arrearage should be retroactively reduced because it resulted from a flawed court order. Id. Specifically, he argued that the 1992 support order was flawed because it was based on his 1991 income, rather than his income after he lost his job in December, 1991. On appeal, Mr. Brady also argued that the trial court had erred in imputing income in 1992. We rejected these arguments, finding that the trial court was precluded by R.C. 3113.21(M)(3) from retroactively modifying the February, 1992 child support order. Id. at 4.
In Brady II, Mr. Brady litigated issues relating to his obligation to pay support beyond the age of majority if his children remained in high school after their eighteenth birthdays. Mr. Brady felt that his obligation should cease on the eighteenth birthday because a contrary holding would encourage "procrastination." 1996 WL 285231, p. 2. We rejected this claim on both a legal and factual basis. We found that Mr. Brady had signed an unambiguous document agreeing to pay support until his children reached the age of majority and graduated from high school, or were otherwise emancipated. Id. at 3. We also concluded that Mr. Brady's son had not, in fact, procrastinated, since the son had already been held back in school one year at the time that Mr. Brady signed the separation agreement. Id. at 5.
In Brady III, Mr. Brady tried to relitigate the same issues that had been resolved in Brady I and II. Specifically, in Brady III, the trial court had filed a notice indicating that support for the middle child, Brandon, would end on June 8, 1996, if Brandon was not continuously attending high school. The notice also stated that the unaudited support arrearage was $20,873.80. Mr. Brady then requested a mistake of fact hearing to contest the arrearage figure. Brady III, 1997 WL 309409, p. 3.
At the mistake of fact hearing, Mr. Brady again tried to dispute the 1992 support order. The magistrate and trial court rejected this claim on res judicata grounds, and found an arrearage of $21,095.10 as of May 14, 1996. Id. at 4.
On appeal, we affirmed the trial court, finding that the issue preclusion aspect of res judicata barred Mr. Brady from relitigating the issues of the February, 1992 support order and the emancipation of his minor children as it affected the child support arrearage. Id. at 5. In our decision, we noted that Mr. Brady had argued before the magistrate that the arrearage amount of $21,085.10 "was incorrect only insofar as it was the result of the `untimely' emancipation of Michael and Brandon, and the February, 1992 support order." Id. at 4. We also noted that "Mr. Brady claimed that the February 1992 child support order had not accurately reflected his economic circumstances and submitted numerous exhibits in support." Id. We rejected these claims on the basis of issue preclusion, holding that "Mr. Brady is precluded from raising new arguments, or repeating old ones, to attack the February 1992 child support order." Id.
The present appeal arises from yet another notice issued by the trial court regarding emancipation — this time, of Mr. Brady's youngest son, Matthew. In response to this notice, Mr. Brady filed a request for a mistake of fact hearing concerning the unaudited arrearage of $20,289.68. This time, Mr. Brady apparently argued that child support should be adjusted, in equity, over the life of a support order to ensure that the order accurately reflects the income of both parties as income fluctuates. (We say "apparently," because no transcript has been filed. However, in the decision, the magistrate did mention Mr. Brady's argument about equitable adjustment of support.)
After the mistake of fact hearing, the magistrate filed a decision emancipating Matthew as of June 8, 2001, and terminating the child support obligation for Matthew. At the time of the support hearing, Mr. Brady was employed and had been consistently paying the current support obligation of $107.06 per month, as well as a small amount on the arrearage. The magistrate set the support arrearage at $19,841.64, and ordered an arrearage repay of $200 per month. In the decision, the magistrate noted that Mr. Brady had made an "interesting" argument about adjusting child support. However, the magistrate found that the claim was barred by res judicata. The magistrate also found no basis for implementing such a system in Ohio. After Mr. Brady filed objections, the trial court agreed that the claim was barred by res judicata. Mr. Brady then filed the present appeal.
 I
As we said, Mr. Brady contends in the first assignment of error that the trial court erred in applying res judicata as the basis for dismissal. In this regard, Mr. Brady says he is raising new issues that could not have been decided earlier. Specifically, Mr. Brady points out that his wage history was available only at the end of the support process. While this may be true, it is both legally and factually irrelevant.
First of all, the trial court correctly applied res judicata. In BradyIII, we held that the issue preclusion aspect of res judicata barred Mr. Brady's attempt to re-litigate issues relating to his child support arrearage. 1997 WL 309409, pp. 4-5. In defining this concept, we said that:
 [i]ssue preclusion, also referred to as collateral estoppel, is comprised of four elements:
 (1) The party against whom estoppel is sought was a party or in privity with a party to the prior action;
 (2) There was a final judgment on the merits in the previous case after a full and fair opportunity to litigate the issue;
 (3) The issue must have been admitted or actually tried and decided and must be necessary to the final judgment; and
 (4) The issue must have been identical to the issue involved in the prior suit.
Id. at 5 (citation omitted). See, also, New Winchester Gardens,Ltd. v. Franklin County Bd. of Revision (1997), 80 Ohio St.3d 36,41.
The parties in all four cases have been the same or in privity with one of the parties. Further, in 1992, there was a final judgment on the merits of the court-ordered support and the issue of voluntary unemployment, after a full and fair opportunity to litigate the issue. In July, 1994, an arrearage of $18,129.06 was set. That amount was based on the 1992 support order. While Mr. Brady felt that the order was flawed, both the trial court and this court held that the order could not be reviewed and that the arrearage could not be retroactively modified.Brady I, 1995 WL 628025, p. 1. Mr. Brady appealed to the Ohio Supreme Court, but the appeal was not allowed. See Brady v. Brady (1996),75 Ohio St.3d 1422. Therefore, the arrearage became part of a final judgment at that time.
Notably, as part of the lower court proceedings in Brady I, Mr. Brady's child support obligation was reduced to a total of $214.12 per month for the two remaining children. At the time, Mr. Brady said that he did not dispute the amount of the monthly support obligation. 1995 WL 628025, p. 1. Consequently, the 1994 support order also became a final judgment. We note that Mr. Brady has never filed a motion to modify or vacate the 1994 support order.
Subsequently, on May 14, 1996, the trial court filed a decision emancipating one of the two remaining children as of June 8, 1996. Therefore, Mr. Brady's support obligation after that date was only $107.06 per month for one child. The arrearage at that time was set at $21,095.10. See Brady III, p. 4. Again, in 1996, Mr. Brady did not object to the amount of currently-ordered child support; instead, he challenged the 1992 support order and the amount of the 1994 arrearage. However, we held that the issue preclusion aspect of res judicata barred Mr. Brady's attempt to relitigate issues relating to his child support arrearage. 1997 WL 309409, pp. 4-5. Mr. Brady also tried to appeal this decision to the Ohio Supreme Court, but the appeal was not allowed. SeeBrady v. Brady (1997), 80 Ohio St.3d 1422. Therefore, the $21,095.10 arrearage became part of a final judgment and was no longer subject to dispute.
Between 1997 and the present time, Mr. Brady has not filed any motions for relief under Civ.R. 60, nor has he filed any motions to modify his current support obligation. Instead, when the court filed a notice in April, 2001, about emancipating the youngest son, Mr. Brady filed another request for a mistake of fact hearing. This time, he claimed that the court should retroactively modify the arrearage, based on fluctuations in his income during the years child support was paid.
Although Mr. Brady has changed the theory under which he is proceeding, he is still attacking the 1992 child support order (which gave rise to the arrearage), as well as our prior decisions, which have affirmed the arrearages that were set, not only as a result of the 1992 order, but also as the result of the 1994 support order that Mr. Brady did not dispute. However, these issues were settled many years ago. The parties are the same, final judgments on the merits were filed after a full and fair opportunity to litigate, the support and arrearage issues were actually tried and decided, and the issues are identical. Notably, the only period of time for which income was imputed was 1992 through 1994. The rest of the time, Mr. Brady's support has been at a level that he did not dispute. Therefore, any arrearage that exists is the result of the 1992 support order, or the 1994 support order, which became final at the latest in 1996, when the Ohio Supreme Court dismissed the appeal in Brady I.
We have previously rejected Mr. Brady's attempts to challenge these matters, based on his failure to appeal the 1992 order, and on resjudicata. See Brady I and Brady III. Therefore, the arrearage cannot be collaterally attacked, even if a different theory is used.
If Mr. Brady felt his support obligation should be reduced, he could have filed a motion to modify support. See R.C. 3113.21(M)(4) (now codified as R.C. 3119.84). This statute allows courts to modify support obligations that become due after a motion to modify the support order has been given to each obligee. Significantly, this is the kind of vehicle Mr. Brady seems to be advocating, i.e., a means of adjusting support for income fluctuations. However, Mr. Brady never took advantage of this process. Despite this failure, he has, in fact, benefitted from downward support adjustments that occurred as the result of agreement and from administrative review.
Potentially, Mr. Brady could also have filed a motion for relief from judgment under Civ.R. 60, but he failed to take this step, either. As we said, any arrearage that exists now is either the result of the 1992 order, which was not appealed, or stems from Mr. Brady's failure to pay child support from 1994 through 2001. However, he did not dispute the level of support that was ordered in 1994, and it was also the subject of a final judgment. Accordingly, the present claim is barred under the issue preclusion aspect of res judicata.
Furthermore, even if the claim were not barred, we would reject it. Specifically, we have held on numerous occasions that a trial court may not modify a due and unpaid amount of child support. See, e.g., State exrel. Gilmore v. Minter (Dec. 19, 1997), Montgomery App. No. 16462, unreported, 1997 WL 779130, p. 5, citing McPherson v. McPherson (1950),153 Ohio St. 82, syllabus; Leffel v. Leffel (Oct. 24, 1997), Clark App. No. 97-CA-20, unreported, 1997 WL 666102, p. 5 (courts may not retroactively reduce payments that are already delinquent); and Coffmanv. Coffman (June 28, 1995), Greene App. No. 94-CA-104, unreported, 1995 WL 386926, p. 4. See also R.C. 3113.21(M)(3), now codified as R.C. 3119.83
(indicating that courts "may not retroactively modify an obligor's duty to pay a delinquent support payment"). Consequently, even if Mr. Brady's claims were not barred by res judicata, they would fail as a matter of law. To put this in terms that Mr. Brady needs to understand: the amount of the arrearage is fixed and cannot be modified by the court — now or ever.
As a final point, we should add that, unlike the magistrate, we do not find Mr. Brady's equitable adjustment argument "interesting." Instead, we are disturbed by Mr. Brady's continuing attempts to evade the support obligation for his children.
Based on the preceding discussion, the first assignment of error is overruled.
 II
The second and third assignments of error raise the same issues as the first assignment of error, and are also without merit. In the second assignment of error, Mr. Brady contends that the trial court should have dismissed his arrearage because the percentage of child support he paid is larger than what is statutorily required. To prove this point, Mr. Brady has included a number of facts about his earnings for the years 1988 through 1998, as well as various graphical illustrations. However, these matters are not part of the trial court record and may not be considered on appeal. Dobbs v. Guthrie (Aug. 20, 1999), Greene App. No. 98-CA-132, unreported, 1999 WL 957692, p. 2.
Even if we considered these items, we would find them unpersuasive. Specifically, the assumptions Mr. Brady makes are faulty. For example, to calculate the parties' total child support obligation for all the years in question, Mr. Brady uses a combined gross income of $36,000. However, in three of those years, Mr. Brady's own income, alone, was $46,155, $42,440, and $34,137. There is also no evidence of record indicating what Mrs. Brady's income was during the relevant time. Consequently, the basic assumption on which the "statistical analysis" rests is flawed. A court would also hardly find persuasive the fact that Mr. Brady paid no child support at all during a year in which he admits earning $46,155. As an additional matter, even if the analysis were not flawed, delinquent support obligations cannot be retroactively modified.
We also note that the legal citations submitted by Mr. Brady are either inapplicable or non-existent. For example, Mr. Brady cites R.C.3113.211(G) as authority for the fact that courts may issue orders cancelling arrearages. However, no such code section exists. At the time of the mistake of fact hearing, R.C. 3113.211 contained only subsections (A) through (D). This section of the Ohio Revised Code also did not deal with arrearages. Instead, it addressed fees that may be assessed for withholding or deduction of child support. For example, R.C. 3113.211(A)(2) authorized payors to charge fees for complying with withholding orders. Due to recent amendments, the content of this statute has been recodified in various places, i.e., R.C. 3113.211(A) is now codified at R.C. 3121.18. However, there was (and is) no R.C.3113.211(G).
The only reference we have found in the Ohio Revised Code to cancellation of arrearages is contained in R.C. 3119.964, which says that if a court grants relief from a support order under R.C. 3119.962, and an arrearage is owed, the court may cancel the arrearage. R.C. 3119.962 is clearly inapplicable, since it covers situations where genetic tests indicate a zero percent probability that an obligor is the father of the child.
In the third assignment of error, Mr. Brady claims that he should be issued a refund of about $13,136, because he has "overpaid" support. This argument is again based on the theory that the percentage of support paid exceeds statutory requirements. For the reasons just mentioned, we reject this assignment of error.
In view of the preceding discussion, the second and third assignments of error are without merit and are overruled.
 III
In the fourth assignment of error, Mr. Brady challenges the trial court's decision to assess costs against him. Mr. Brady's argument in this context appears to be that he was subject to a "seek work" order and never turned down any job offer while he was unemployed. Mr. Brady also claims that he never acted in a way to be found in contempt, but that the court did so for its own convenience. Because fees were split equally between the parties prior to 1994, Mr. Brady feels assessing 100% of the fees against him is "discriminatory."
As a preliminary point, we note that the present appeal does not involve a contempt finding. Mr. Brady was previously found in contempt on March 12, 1999, for failure to pay support. At that time, a 30 day jail sentence was imposed, but was suspended. Various review hearings have been held since, and Mr. Brady has been found in substantial compliance with the requirement to pay support. Mr. Brady did not appeal the original contempt finding, nor has he filed an appeal after any of the review hearings. Accordingly, none of the factual matters Mr. Brady mentioned is before us, and the prior contempt finding is irrelevant to this appeal.
The present appeal arises from a mistake of fact hearing requested by Mr. Brady. Since Mr. Brady was not successful at the hearing, the trial court was permitted to award costs to the prevailing party. Specifically, Civ.R. 54(D) provides that "[e]xcept when express provision therefor is made either in a statute or in these rules, costs shall be allowed to the prevailing party unless the court otherwise directs." According to the Ohio Supreme Court, this rules vests trial courts with discretion on how costs of an action will be assessed. State ex rel.Fant v. Regional Transit Authority (1990), 48 Ohio St.3d 39.
We find no abuse of discretion in the award of costs against Mr. Brady. In fact, Ms. Brady has asked in her brief how she can prevent constant harassment in the courts "by a man who has made little attempt to contribute to his children financially or even provide basic necessities." As we mentioned earlier, the arrearage is not subject to modification. Consequently, future attempts by Mr. Brady to contest this matter may be proper subjects for awards of attorney fees and costs incurred by opposing parties. See R.C. 3105.18(H) (allowing awards of attorney fees in divorce actions at any stage of the proceedings), and R.C. 2323.51 (governing awards of fees and costs as sanctions for vexatious litigation). We also have the power to award reasonable expenses of an appellee, including fees and costs, if we find that an appeal is frivolous. See App.R. 23.
Based on the preceding discussion, the fourth assignment of error is without merit and is overruled.
Accordingly, the first, second, third, and fourth assignments of error are overruled, and the judgment of the trial court is affirmed. Costs are assessed against Appellant.
FAIN, J., and YOUNG, J., concur.