[This opinion has been published in *Ohio Official Reports* at 80 Ohio St.3d 36.]

NEW WINCHESTER GARDENS, LTD., APPELLANT, *v.* FRANKLIN COUNTY BOARD OF REVISION ET AL., APPELLEES.

[Cite as *New Winchester Gardens, Ltd. v. Franklin Cty. Bd. of Revision*, 1997-Ohio-360.]

*Taxation—Real property valuation—True value of government-subsidized apartment determined, how—Decision of Board of Tax Appeals unreasonable and unlawful, when.*

(No. 96-1755—Submitted February 25, 1997—Decided October 8, 1997.)

APPEAL from the Board of Tax Appeals, Nos. 94-D-390 and 94-D-391.

————————————

{¶ 1} In October 1984, New Winchester Gardens, Ltd. ("New Winchester"), a limited partnership, purchased a 206-unit apartment development located in southeast Columbus from Winchester Gardens, Ltd. The selling price, as set forth in the real property conveyance fee statement, was $7,250,000.

{¶ 2} The current appeal concerns tax year 1987; however, to understand one of the issues raised in this appeal we must start with a review of a prior appeal regarding the same property to the Board of Tax Appeals ("BTA") for the tax year 1986. In March 1987, the Groveport Madison Local Schools Board of Education ("BOE") filed complaints with the Franklin County Board of Revision ("BOR") alleging that for tax year 1986 New Winchester's real property should be valued at the sale price of $7,250,000. New Winchester filed countercomplaints alleging that the true value of its real property should be $5,455,000. The BOR determined that the true value of New Winchester's real property was $7,250,000. New Winchester filed an appeal with the BTA, which affirmed the BOR. New Winchester then appealed to the Franklin County Court of Appeals, which affirmed the BTA. *New Winchester Gardens v. Franklin Cty. Bd. of Revision* (Sept. 28, 1989), Franklin

App. Nos. 89AP-72 and 89AP-73, unreported, 1989 WL 112349. This court denied New Winchester's motion to certify the record. *New Winchester Gardens v. Franklin Cty. Bd. of Revision* (1990), 49 Ohio St.3d 706, 551 N.E.2d 1301.

{¶ 3} At the hearing before the BTA for tax year 1986, New Winchester's only witness was appraiser John Garvin, who testified about his appraisal and then analyzed the structure and terms of the October 1984 sale. Counsel for the county objected to Garvin's testimony, but the BTA permitted him to testify. Garvin described the 1984 sale as a resyndication, the purpose of which was to restructure tax benefits and to recoup the initial cash investment for the original investors. In its final decision, for tax year 1986, the BTA rejected Garvin's testimony concerning the 1984 sale as hearsay.

{¶ 4} The only evidence offered by the BOE at the hearing for the 1986 tax year was that of certified copies of the conveyance fee statement and the warranty deed for the 1984 sale.

{¶ 5} With the foregoing as background we turn now to the tax year at issue in this case. The BOE filed complaints for tax year 1987 alleging a true value for New Winchester's real property of $7,250,000. New Winchester did not file any countercomplaints. The BOR determined a true value of $7,245,000, and New Winchester filed appeals with the BTA.

{¶ 6} During opening statements before the BTA, counsel for the county appellees (county auditor and board of revision) and counsel for the appellee BOE stated that they would be relying on collateral estoppel to prevent the introduction of evidence on the issue of whether the 1984 sale was an arm's-length sale. At that point the attorney-examiner recessed the hearing and asked counsel for the county appellees to file a motion *in limine* based on the issue of collateral estoppel.

{¶ 7} The BTA denied the motion *in limine*, stating that because the appraiser's testimony at the hearing of the 1986 case was disregarded as hearsay, the issue of whether the sale was an arm's-length sale was not determined in the

1986 case. Counsel for the county appellees and appellee BOE also jointly filed a separate motion *in limine* based upon R.C. 5715.19(G) to prevent New Winchester from presenting witnesses and evidence to the BTA that it could have presented, but did not present, before the BOR. In addition, the appellees also filed a motion asking the BTA to reconsider its denial of their motion *in limine* based upon collateral estoppel. The BTA denied both motions. It denied the motion *in limine* requested under R.C. 5715.19(G), stating that R.C. 5715.19(G) was applicable to a complainant and the complainant was the BOE not New Winchester. It denied the motion to reconsider the denial of the motion *in limine* based on collateral estoppel, stating that no evidence had been adduced to corroborate the presence of collateral estoppel.

{¶ 8} After ruling on the motions, the BTA reconvened the hearing for tax year 1987. New Winchester produced three witnesses and an appraisal by John Garvin. New Winchester's first witness, Richard G. Cassie, president of Planned Investment Association, Inc., explained that it was his company's business to put together syndications of existing apartment projects in the Columbus, Ohio area for its clients. Cassie explained how syndications are designed, depending upon whether the investment object of the limited partnership was income, tax shelter, or a combination of income and shelter. After questioning Cassie concerning a change in the federal tax laws that took place in 1986, the attorney-examiner intervened and the appellees objected to Cassie's testifying further. The attorney-examiner terminated Cassie's testimony because Cassie had no contact with the New Winchester sale. New Winchester's counsel proffered that Cassie's testimony "would have basically discussed the change in the tax laws as it impacted the market for real property tax syndications in the Columbus market in which he was actively involved during the period that's before this Board."

{¶ 9} New Winchester's next witness was W. Scott Haynes, a general partner of both the seller and buyer involved in the 1984 sale. Haynes explained

that the apartment project received assistance from the United States Department of Housing and Urban Development ("HUD") in the form of an insured mortgage, which precluded personal liability, and a "236 Program," which lowered the interest rate to about one percent. The HUD subsidy was passed through to the tenants in the form of lower rent. However, when the 236 Program projects started to fail, HUD created a "Section 8 Program" for rent supplement, which was also applicable to New Winchester. All the governmental mortgage and rental subsidies that were in place and applicable to New Winchester were transferred, with the required approval of HUD, when the apartment project was sold in 1984. Referring to the government programs, Haynes stated that "[y]ou might say it could not have sold without it." Haynes also stated that these agreements were an important aspect of the resyndication and that without the agreements "there wasn't anything for us to resyndicate. In effect you have the full faith and credit of the United States Government backing a transaction, and that increased its theoretical value beyond what real estate in itself might be." Finally, Haynes stated that the prime reason for New Winchester acquiring the property was to take advantage of the tax losses generated and passed through to the limited partners.

{¶ 10} Payment for the 1984 sale consisted of cash in the amount of $1,345,000, two notes of $850,000 each, and the assumption of the existing mortgage. The two notes, which were non-negotiable, stated that "[i]n the event of a default in the payment of the indebtedness evidenced hereby, the Payee covenants that the Payee shall take no action against the Maker or any partner thereof personally for the payment of the principal balance of this Note and any interest thereon." Haynes testified that no interest has been paid on either of the notes. In the event the notes are not paid when due in 1997, Haynes stated the property would revert back to the original partners.

{¶ 11} New Winchester's third witness, appraiser Ronald P. Davis, testified that the Real Estate Tax Act of 1986 changed the federal tax law so that after 1986

4

passive losses could not be applied against regular income or investment income. As a result, according to Davis, the market for real property dependent upon creating tax shelters was depressed.

{¶ 12} Davis appraised the property both on a market approach and an income approach basis. Davis in his income approach, using comparable market rentals and average expenses and percentages, calculated that the value of the property was $4,900,000. Using the market approach Davis determined the value of the real property to be $5,038,000. Reconciling his values, with the emphasis on the value determined by the income method, and deducting a cost to cure of $582,935, Davis's final opinion of value was $4,317,000 for tax year 1987.

{¶ 13} In addition, an appraisal by John Garvin, using a valuation date of January 1, 1986, that was included in the BOR transcript, explained the economic effects of the various governmental programs. Garvin specifically stated that his appraisal was based on market value and not artificial subsidized payments. In his appraisal, Garvin analyzed the 1984 sale, stating, "The transaction as reported was a recent resyndication of the tax shelter benefits and did not have any substance supported by economic value in the real estate." By letter dated May 10, 1988, Garvin updated his January 1, 1986 appraisal to January 1, 1987, retaining a valuation of $4,300,000.

{¶ 14} The county appellees' evidence at the hearing for tax year 1987 consisted of the BOR transcripts in the 1986 case, the BTA decision in the 1986 case, documents relating to the Franklin County Court of Appeals decision of the 1986 case on appeal, and the notice that the Supreme Court had overruled the motion to certify the court of appeals' decision in the 1986 case. Finally, the county appellees offered a transcript of the BTA hearing for the 1986 case, and asked the BTA to take judicial notice of its file for the 1986 case. In addition, the BOE introduced copies of the conveyance fee statement and warranty deed for the real property at issue.

**{¶ 15}** The BTA's decision, for tax year 1987, reviewed the proceedings for the 1986 case, stating that the "ultimate fact and legal determinations" for tax year 1986 were "binding upon the parties and this Board in this tax year 1987 case, under the established legal doctrine of *res judicata*." The BTA deemed Haynes's testimony to be a "collateral attack" upon its prior determination that the 1984 sale was an arm's-length transaction, and stated that "Haynes' opinions to the contrary are therefore given no evidentiary weight or value." In the alternative, the BTA reversed its prior decision, issued in response to the motion *in limine,* and stated that if Haynes's testimony could not be barred by *res judicata,* then it could be precluded under R.C. 5715.19(G).

**{¶ 16}** The BTA further said that it rejected Garvin's appraisal in the 1986 case and therefore was rejecting it again. In addition, the BTA rejected Davis's appraisal, believing that Davis gave no credence to the BTA's determination that the 1984 sale was an arm's-length sale or that the sale price represented the value on January 1, 1986. Finally, the BTA found the evidence presented by New Winchester to be insufficient to establish the property value. The BTA then independently found the value to be the same as that determined by the BOR.

**{¶ 17}** This cause is now before the court upon an appeal as of right.

_____

*Todd W. Sleggs*, for appellant.

*Ronald J. O'Brien*, Franklin County Prosecuting Attorney, *James R. Gorry* and *Matthew Chafin*, Assistant County Prosecutors, for appellees Franklin County Board of Revision and Franklin County Auditor.

*Teaford, Rich & Wheeler* and *Jeffrey A. Rich,* for appellee Groveport Madison Local Schools Board of Education.

_____

***Per Curiam.***

**{¶ 18}** New Winchester's first argument is that the BTA erred in its application of the doctrine of *res judicata* to preclude certain evidence in this matter. We disagree.

**{¶ 19}** The relevant portion of the BTA decision states:

"This Board and the Court of Appeals, based upon the probative evidence and record before them determined that the 1984 sale constituted an arm's-length sale, and that the sale price was the market value of such property at the time of that sale, as well as specifically applicable to the tax year 1986. Those ultimate fact and legal determinations are now applicable and conclusively binding upon the parties and this Board in this tax year 1987 case, under the established legal doctrine of *res judicata*."

**{¶ 20}** Based on this determination, the BTA refused to consider additional evidence which went to the issue of whether the 1984 sale was an arm's-length transaction.

**{¶ 21}** The concept of *res judicata* was explained in *Grava v. Parkman Twp*. (1995), 73 Ohio St.3d 379, 381, 653 N.E.2d 226, 228, as involving "both claim preclusion (historically called estoppel by judgment in Ohio) and issue preclusion (traditionally known as collateral estoppel)." This case involves collateral estoppel. In *Superior's Brand Meats, Inc. v. Lindley* (1980), 62 Ohio St.2d 133, 16 O.O.3d 150, 403 N.E.2d 996, we confirmed that the doctrine of collateral estoppel may under appropriate circumstances be applied to decisions of the BTA.

**{¶ 22}** The purpose of collateral estoppel is to preclude "the relitigation, in a second action, of *an issue* that has been actually and necessarily litigated and determined in a prior action which was based on a different cause of action." (Emphasis *sic*.) *Whitehead v. Gen. Tel. Co*. (1969), 20 Ohio St.2d 108, 112, 49 O.O.2d 435, 437, 254 N.E.2d 10, 13.

**{¶ 23}** While this case involves the same parties and the same property as involved in the 1986 case, it concerns a different tax year and therefore is a different cause of action. *Std. Oil Co. v. Zangerle* (1943), 141 Ohio St. 505, 26 O.O. 82, 49 N.E.2d 406.

**{¶ 24}** In *Thompson v. Wing* (1994), 70 Ohio St.3d 176,183, 637 N.E.2d 917, 923, we stated that collateral estoppel was applicable when the fact or issue "(1) was actually and directly litigated in the prior action, (2) was passed upon and determined by a court of competent jurisdiction, and (3) when the party against whom collateral estoppel is asserted was a party in privity with a party to the prior action." See, also, *Goodson v. McDonough Power Equip., Inc*. (1983), 2 Ohio St.3d 193, 2 OBR 732, 443 N.E.2d 978.

**{¶ 25}** With the foregoing background we turn to a consideration of the hearing before the BTA for tax year 1986. New Winchester, as the appellant before the BTA, bore the burden of proving its right to a reduction in value. *R.R.Z. Assoc. v. Cuyahoga Cty. Bd. of Revision* (1988), 38 Ohio St.3d 198, 527 N.E.2d 874. A major problem faced by New Winchester in meeting its burden was to overcome the concept that "[t]he best evidence of 'true value in money' of real property is an actual, recent sale of the property in an arm's-length transaction." *Conalco, Inc. v. Monroe Cty. Bd. of Revision* (1977), 50 Ohio St.2d 129, 4 O.O.3d 309, 363 N.E.2d 722, paragraph one of the syllabus. One of the ways New Winchester attempted to overcome evidence of the 1984 sale was to show that the sale was not an arm's-length transaction. If New Winchester could prove that the sale was not an arm's-length sale, then it would have been appropriate for the BTA to review independent appraisals based upon factors other than the price to show that the 1984 sale price did not reflect true value. *Ratner v. Stark Cty. Bd. of Revision* (1986), 23 Ohio St.3d 59, 23 OBR 192, 491 N.E.2d 680, syllabus.

**{¶ 26}** At the BTA hearing, for tax year 1986, New Winchester introduced the testimony of appraiser John Garvin. In addition to his appraisal testimony,

8

Garvin, over objection, testified to details concerning the 1984 sales transaction. However, in its final decision, the BTA rejected Garvin's testimony as hearsay because he had no personal knowledge of the sale, and the sale documents were not introduced. Garvin's testimony before the BTA was described by the Franklin County Court of Appeals as follows:

"The gist of the disputed testimony is that the property transfer was not an arm's-length transaction, but, rather a resyndication. * * *" *New Winchester Gardens v. Franklin Cty. Bd. of Revision* (Sept. 28, 1989), Franklin App. Nos. 89AP-72 and 89AP-73, unreported, 1989 WL 112349.

{¶ 27} A review of the BTA's decision for tax year 1986 and the relevant criteria in *Thompson* for the application of *res judicata* show that the criteria required to invoke collateral estoppel are present in this case as to the arm's-length nature of the 1984 sale. The parties involved in the litigation are the same parties that were involved in the litigation for the 1986 tax year. Both the BTA and the Franklin County Court of Appeals determined that New Winchester raised the issue of whether the 1984 sale was an arm's-length sale for the 1986 tax year. The fact that New Winchester's evidence failed to prove that the 1984 sale was not an arm's-length transaction is of no consequence. The important fact is that the issue was raised and decided in the prior case. *Heiser v. Woodruff* (1946), 327 U.S. 726, 66 S.Ct. 853, 90 L.Ed. 970.

{¶ 28} New Winchester's second argument is that R.C. 5715.19(G) is not applicable in this case. We agree.

{¶ 29} In its opinion, the BTA stated two reasons for excluding Haynes's testimony under R.C. 5715.19(G). The first reason was that the information presented by Haynes was not presented to the BTA or the board of revision in the 1986 case. The second reason was that that information was not offered to the board of revision in the present case. Neither of these reasons is valid.

{¶ 30} R.C. 5715.19(G) provides in part:

"A complainant shall provide to the board of revision all information or evidence within his knowledge or possession that affects the real property that is the subject of his complaint. A complainant who fails to provide such information or evidence is precluded from introducing it on appeal to the board of tax appeals * * * except that the board of tax appeals * * * may admit and consider the evidence if the complainant shows good cause for his failure to provide the information or evidence to the board of revision."

{¶ 31} The word "complainant" is not defined in R.C. 5715.19(G). Black's Law Dictionary (6 Ed.1990) 285, defines a "complainant" as "[o]ne who applies to the courts for legal redress by filing complaint." The reference to a "complainant" in R.C. 5715.19(G) clearly refers to the entity that filed the complaint in question with a board of revision.

{¶ 32} The BTA's contention that R.C. 5715.19(G) precluded Haynes's testimony at the BTA hearing because it was not presented to the BOR is not correct. A review of the record in this case discloses that the only complaints filed with the BOR were filed by the BOE. No countercomplaints were filed by New Winchester. Thus, New Winchester was not a complainant before the BOR in this matter, and therefore R.C. 5715.19(G) was not applicable to it at the BTA hearing.

{¶ 33} The BTA's ruling that R.C. 5715.19(G) was applicable to Haynes's testimony because it could have been presented in the 1986 case is contrary to the plain wording of the statute. The concept of "complainant," as used in R.C. 5715.19(G), is relevant only to the party that was a complainant in the case before the board of revision that is being reviewed on appeal to the BTA.

{¶ 34} Thus, while the BTA properly excluded Haynes's testimony on the issue of whether the 1984 sale was an arm's-length transaction, Haynes's other testimony as to the factors affecting value after January 1, 1986 should have been considered by the BTA.

**{¶ 35}** New Winchester's third argument is that as a result of the exclusion of Haynes's testimony and Richard Cassie's testimony, it was prevented from presenting any "'factual * * * reason why the value of the subject property incurred a market value loss * * * between January 1, 1986 and January 1987.'" We agree.

**{¶ 36}** We have already indicated the extent to which Haynes's testimony should be considered, and we find Cassie's testimony also should have been considered. Cassie's testimony would have shown how the market for syndicated apartment developments had changed as a result of a change in the 1986 federal tax law. In explaining the purpose of Cassie's testimony counsel for New Winchester stated, "[I]t's our position that one very important market change occurred between the 1984 resyndication of the subject property and the tax lien date at issue in this case, January 1, 1987, and that market change was the change in the tax law." At this point, the attorney examiner terminated Cassie's testimony because Cassie had no connection with the sale of the New Winchester property.

**{¶ 37}** The question of how long after a sale the sale price is to be considered the best evidence of true value will vary from case to case. R.C. 5713.03 provides that if there has been "an arm's-length sale between a willing seller and a willing buyer within a reasonable length of time, either before or after the tax lien date, the auditor shall consider the sale price * * * to be the true value for taxation purposes." See *Dublin-Sawmill Properties v. Franklin Cty. Bd. of Revision* (1993), 67 Ohio St.3d 575, 621 N.E.2d 693. One of the factors that must be considered in determining what is "a reasonable length of time" is a consideration of the changes that have occurred in the market. If the market is changing rapidly, then the selling price will not be the best evidence of true value for as long a period of time as when the market is not changing or changing very slowly. In this case Cassie's proposed testimony about market changes was relevant to determining true value, and he should have been permitted to testify and have his testimony considered by the BTA.

**{¶ 38}** Finally, New Winchester argues that "[t]he subsidies and their affect [*sic*] on the value of real property must be disregarded."  We agree.

**{¶ 39}** It is undisputed that the real estate involved in this matter is government-subsidized housing.  In *Alliance Towers, Ltd. v. Stark Cty. Bd. of Revision* (1988), 37 Ohio St.3d 16, 23, 523 N.E.2d 826, 832, another case involving government-subsidized housing, we stated: "It is the fair market value of the property in its unrestricted form of title which is to be valued.  It is to be valued free of the ownerships of lesser estates such as the leasehold interests, deed restrictions, and restrictive contracts with the government.  For real property tax purposes, the fee simple estate is to be valued as if it were unencumbered."  In this case, the real property was sold with, and subject to, various government subsidy programs.  Because of the BTA's treatment of the testimony of New Winchester's witnesses, its opinion ignored the effect of the subsidies and other government programs upon value.

**{¶ 40}** Unlike past cases involving subsidized housing, this case involves the actual sale of subsidized housing.  In past cases, appraisals have been presented that have expressly valued the subsidized developments unencumbered by the government's subsidies.  See *Alliance Towers, Ltd., supra*.  In this case, as stated by Davis, "[t]he subsidized nature of the property would have been reflected in any sale price."

**{¶ 41}** Failure to consider the effects of the government contracts when determining the value of subsidized housing will lead to lack of uniformity not only in valuing subsidized housing versus nonsubsidized housing, but also as between subsidized housing projects.  For instance, assume two identical subsidized housing projects are to be valued.  Assume that both projects are ten years old, except one has been sold in an arm's-length transaction a few months prior to the valuation date at a price which reflects both the real estate and the government subsidies.  To achieve uniformity, the recently sold project should be valued for tax purposes on

an unencumbered basis as would the other property. If the sale price includes a value that can be determined for the government subsidies, then that portion of the sale price should be deducted in arriving at the true value of the real property; alternatively, the property should be valued without consideration of the encumbrances. Of course, the burden remains on the party seeking a reduction in value to present evidence satisfactory to the BTA to enable it to determine the true value on an unencumbered basis.

{¶ 42} Because of our rulings on New Winchester's arguments, we find it unnecessary to comment on the constitutional arguments it has raised.

{¶ 43} For the foregoing reasons, the decision of the BTA is unreasonable and unlawful and it is reversed, and the cause is remanded for further hearing and consideration in accordance with this opinion.

*Decision reversed*
*and cause remanded.*

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

DOUGLAS, J., dissents.

———————————