CUMMINS PROPERTY SERVICES, L.L.C., APPELLEE, *v.* FRANKLIN COUNTY
BOARD OF REVISION ET AL., APPELLEES; BOARD OF EDUCATION OF
THE WORTHINGTON CITY SCHOOL DISTRICT, APPELLANT.

[Cite as *Cummins Property Servs., L.L.C. v. Franklin Cty.
Bd. of Revision,* 117 Ohio St.3d 516, 2008-Ohio-1473.]

(No. 2007–0195—Submitted December 12, 2007—Decided April 3, 2008.)

CUPP, J.

{¶ 1} In this appeal, we address whether the Board of Tax Appeals ("BTA")
properly applied the precepts of our decision in *Berea City School Dist. Bd. of
Edn. v. Cuyahoga Cty. Bd. of Revision,* 106 Ohio St.3d 269, 2005-Ohio-4979, 834
N.E.2d 782, when it considered and rejected various arguments against using a
recent, arm's-length sale price to determine the value of property for taxation
purposes. In this case, the property owner introduced the sale price as evidence
of value, and the BTA accepted that price as determinative.

{¶ 2} The Board of Education of the Worthington City School District ("BOE")
contends that two factors militate against regarding the sale price as indicative of
the value of the property. First, the BOE contends that because the deed
contained a particular use restriction, the sale price did not relate to the full value
of the fee simple interest in the property. As a result, the sale price was not
indicative of the value of the property. Second, the owner undertook renovations
between the date of the sale and the tax lien date, and the BOE asserts that
unless the owner proves that there was no effect on value, those renovations
constitute an intervening improvement to the property that makes it inappropri-
ate to use the sale price to determine value.

{¶ 3} We agree with the BTA's conclusion that the evidence in this record
supports the propriety of using the sale price to determine value. We therefore
affirm.

I

{¶ 4} On March 30, 2004, the property owner, Cummins Property Services,
L.L.C. ("Cummins" or "the L.L.C.") filed its complaint against the auditor's
valuation of the property for tax year 2003. The complaint sought a reduction

from the assigned true value of $530,000 ($274,900 for the land, $255,100 for the building). Cummins proposed a true value of $300,000 based on an allocation of the August 23, 2002 contract price of $385,000 to the parcel at issue. The BOE filed a countercomplaint seeking retention of the auditor's valuation.

{¶ 5} The purchase contract on which Cummins based its claim was signed on April 30, 2002, and involved purchasing the fee interest in a former Star Bank building and grounds (parcel 610–214526) as well as an undivided one-half interest in an adjoining parking area (parcel 610–200937). The interest in both parcels formed the consideration for the purchase price in the same purchase agreement and was conveyed to Cummins by the same deed. The deed, which like the purchase contract related to both parcels, was dated August 21, 2002; among other things, the deed stated that "[n]o portion of the Property shall be used or occupied for the principal or incidental purpose of banking, financial, brokerage or for the operation of any automated or remote teller machine or credit union," a restriction that would last for a period of 15 years from the date of the deed.

{¶ 6} A single conveyance-fee statement was filed with the Franklin County auditor with respect to both parcels, and it evidenced the transfer of the parcels to Cummins as of August 23, 2002, in consideration of the full contract price for both parcels of $385,000.

{¶ 7} Cummins apparently filed separate complaints with respect to each of the adjacent parcels, but only the complaint on the former bank parcel is before us in this appeal. At the hearing before the Franklin County Board of Revision ("BOR"), Cummins presented the purchase agreement and the deed and asked that the BOR reduce the value of the parcel from the auditor's value of $530,000 to $300,000, the suggested allocation of sale price. The BOR retained the auditor's valuation of the property. Cummins then appealed to the BTA.[1]

{¶ 8} At the BTA, Cummins presented the testimony of its principal, Robert Cummins. Mr. Cummins testified that the L.L.C. purchased the former bank building after it had been on the market for approximately four years and offered evidence that the combined price of both the bank property and the interest in the adjacent parking was $385,000. On cross-examination, Mr. Cummins acknowledged the deed restriction and stated his view that the restriction did not depress the property's value at the time of sale. Mr. Cummins testified that an appraisal supported the purchase price and that the appraisal had (Mr. Cummins was "99% sure") taken into account the voluntary deed restriction.

---

1. The BOR's disposition of the complaint Cummins had filed with respect to the parking area is not part of the record of the present case. It appears that Cummins appealed that disposition to the BTA, where it became case No. 2005–T–590. It appears that that case was voluntarily dismissed.

{¶ 9} Mr. Cummins also responded to questions concerning the renovation of the property. The BOR's attorney examined Mr. Cummins concerning building permits, but no building permits, construction documents, or certificates of occupancy were offered into evidence. The attorney suggested that the L.L.C. had applied for permits authorizing $120,000 worth of renovation in the autumn of 2002, and Mr. Cummins did not deny that. (The property record card reflects a $120,000 building permit as of October 2002.) On redirect examination, Mr. Cummins testified that the renovations involved removing the bank vault and adapting the space for use as a medical office. Mr. Cummins testified that removing the bank vault freed up 20 to 25 percent of the interior space of the building for office use, but he could not remember whether the vault was removed before or after the tax lien date.

{¶ 10} No evidence was presented to support the requested allocation of $300,000 of the $385,000 contract price to the bank parcel.

{¶ 11} The BTA issued its decision on January 5, 2007. Relying on *Berea City School Dist. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision,* 106 Ohio St.3d 269, 2005-Ohio-4979, 834 N.E.2d 782, the BTA found that Cummins had presented a recent, arm's-length sale price, that the price presumptively reflected the value of the property on the tax lien date, and that "the BOE did not present sufficient competent, probative, and reliable evidence to rebut the presumption to be afforded" to the sale price as an indicator of value. Specifically, the BTA characterized the deed restriction as "akin to a sale-leaseback. or special financing, which the Supreme Court has determined does not prevent the sale price from being competent and probative of value." As for the renovation to the property, the BTA found that "there is no reliable evidence of the extent of the change to the subject property as of the tax lien date." Moreover, the BOE "provided no quantification or independent evidence of the increase in value of the subject property because of the removal of the safe and increase in the square footage."

{¶ 12} In sum, the BTA regarded the sale price as probative of value and placed the burden of proving otherwise on the shoulders of the party advocating some other measure of value. Against this holding, the BOE argues that the very presence of the deed restriction, and the existing state of evidence regarding renovation of the property, deprives the sale price of its probative force. The BOE therefore urges that the sale price be disregarded and the auditor's valuation restored.

## II

{¶ 13} In *Berea,* we held that "when the property has been the subject of a recent arm's-length sale between a willing seller and a willing buyer, the sale price of the property shall be 'the true value for taxation purposes.'" *Berea,* 106

Ohio St.3d 269, 2005-Ohio-4979, 834 N.E.2d 782, ¶ 13, quoting R.C. 5713.03. At the very heart of *Berea* lies the rejection of appraisal evidence of the value of the property whenever a recent, arm's-length sale price has been offered as evidence of value.[2] Thus, if the BTA correctly found that the sale by which Cummins acquired the property constituted a recent, arm's-length sale, it follows that the value equals the sale price. Under *Berea*, such a sale price is deemed to be the value of the property, and the only rebuttal lies in challenging whether the elements of recency and arm's-length character between a willing seller and a willing buyer are genuinely present for that particular sale.

## III

### A

{¶ 14} The BOE contends that the existence of the deed restriction takes this case outside the holding of *Berea*. Citing *Alliance Towers, Ltd. v. Stark Cty. Bd. of Revision* (1988), 37 Ohio St.3d 16, 523 N.E.2d 826, and *Muirfield Assn., Inc. v. Franklin Cty. Bd. of Revision* (1995), 73 Ohio St.3d 710, 654 N.E.2d 110, the BOE asserts that the property acquired by Cummins, because it represented a legal fee interest encumbered by the deed restriction, "was not the same property that the County Auditor was required to value for real property tax purposes as of January 1, 2003." According to the BOE, the auditor was required to value the fee simple unencumbered, as this court proclaimed in *Alliance Towers* and *Muirfield*. As a result, the sale price of the encumbered fee represented only a portion of the value of the property, because the existence of the encumbrance putatively made the legal fee interest less valuable than it would be without the deed restriction.

{¶ 15} We find that *Alliance Towers* and *Muirfield* are inapposite and that the holding of *Berea* controls our decision of this point of law. *Alliance Towers* and *Muirfield* both addressed the valuation of property by appraisal; in neither of those cases did the court confront a recent, arm's-length sale price as evidence of value. On the other hand, *Berea* did involve a recent, arm's-length sale price, and it confronted and rejected the very argument the BOE is making here.

{¶ 16} In *Berea*, we addressed the 1997 tax-year valuation of a 10.719–acre parcel. The tract contained a 113,000–square–foot retail space and was subject to a 1967 25–year lease with Kmart as lessee, pursuant to which Kmart held an

---

2. In an introductory passage to its argument, the BOE decries the BTA's decision as "default valuation" and argues in essence for a very strong presumption in favor of the auditor's initial determination of value. That argument conflicts with our holding in *Dayton–Montgomery Cty. Port Auth. v. Montgomery Cty. Bd. of Revision*, 113 Ohio St.3d 281, 2007-Ohio-1948, 865 N.E.2d 22, ¶ 27. It also fails to reflect the state of the law by exalting the auditor's appraised value over the legislative policy of using a recent, arm's-length sale price.

option to extend the lease for three additional five-year periods. Rent consisted of a base amount plus a percentage of gross sales. Additionally, a second portion of the tract was subject to a 1985 20-year lease for a 3,454-square-foot Burger King restaurant, with the Burger King franchisee holding an option to extend the lease for four additional five-year periods.

{¶ 17} Among other things, the owner in *Berea* contended before the BTA and then before this court that the March 1996 sale price for the parcel ought to be regarded as the value of the property as of January 1, 1997. In a prior decision, the BTA had already rejected the use of the sale price to determine value for the 1996 tax year: the BTA had held that "the sale was not unencumbered and does not reflect the fee simple value of the subject property." *Berea City School Dist. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision* (Oct. 13, 2000), B.T.A. Nos. 96-L-1382, 96-L-1383, 96-L-1424, and 96-L-1425, at 31, found at http://bta.ohio.gov/96 L1382.PDF. In the case involving the 1997 tax year, the BTA adopted the same approach. *Berea City School Dist. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision* (Nov. 21, 2003), B.T.A. Nos. 2003-J-143, 2003-J-144, and 2003-J-150, 2003 WL 22848297. It was this very holding that we reversed in our decision in *Berea*.

{¶ 18} The central tenet of the BOE's argument is that the sale price of the legal fee interest is not indicative of value because of the existence of an encumbrance—in this context, a relatively minor deed restriction. *Berea* holds that the arm's-length sale price of a legal fee interest should *not* be adjusted on account of the mere existence of an encumbrance. We therefore reject the BOE's contention that the imposition of the deed restriction requires that the sale price be adjusted or that the restriction otherwise calls into question the validity of using the sale price to determine value.

B

{¶ 19} We now turn to those prior decisions from this court that address how to value property that is subject to encumbrances. As already noted, the BOE relies heavily on *Alliance Towers, Ltd. v. Stark Cty. Bd. of Revision,* 37 Ohio St.3d 16, 523 N.E.2d 826, and *Muirfield Assn. v. Franklin Cty. Bd. of Revision,* 73 Ohio St.3d 710, 654 N.E.2d 110. Those cases explicitly state that "[f]or real property tax purposes, the fee simple estate is to be valued as if it were unencumbered." *Alliance Towers,* paragraph one of the syllabus, cited and followed in *Muirfield,* at 711, 654 N.E.2d 110.

{¶ 20} In the previous section of today's opinion, we quickly distinguished those cases by observing that they involved situations in which value was determined not by sale price, but by appraisal. We recognize, however, that standing alone, that observation does not quite suffice. Quite simply, the principle articulated by those cases could easily be understood to require adjustment of a sale price to account for the effect of an encumbrance on value.

{¶ 21} Moreover, Section 2, Article XII of the Ohio Constitution requires that real property be taxed by "uniform rule according to value." Arguably, uniformity means that the rule for appraised properties must also be applied to properties that are subject to a recent, arm's-length sale. Indeed, in a case not cited by the parties, we have so stated.

{¶ 22} In *New Winchester Gardens, Ltd. v. Franklin Cty. Bd. of Revision* (1997), 80 Ohio St.3d 36, 684 N.E.2d 312, we confronted a situation in which a landlord purchased government-subsidized housing. Among other things, we agreed with the owner's assertion that the subsidies and their effect on the value of the real property must be disregarded. Id. at 44, 684 N.E.2d 312. Our reasoning was that the syllabus rule cited above from *Alliance Towers* must be applied to cases where a recent, arm's-length sale price was utilized, because failing to do so would violate constitutionally required uniformity. Id. at 45, 684 N.E.2d 312.

{¶ 23} This case calls for us to revisit that ruling,[3] because it cannot be reconciled with *Berea*. We hold that we erred in *New Winchester* when we authorized the use of appraisals to adjust the price set in a recent, arm's-length transaction. To do so places the cart (appraisal) before the horse (an actual arm's-length sale). As we explained more than 40 years ago, the best method of determining value is an actual sale of the property, but because such information is not usually available, an appraisal becomes necessary. *State ex rel. Park Invest. Co. v. Bd. of Tax Appeals* (1964), 175 Ohio St. 410, 412, 25 O.O.2d 432, 195 N.E.2d 908. When value is determined by appraisal, "the various methods of evaluation, such as income yield or reproduction cost, come into action," but the goal of the appraisal is "to determine the amount which such property should bring if sold on the open market." Id. The legislature reinforced these points through the 1976 enactment of the now familiar language at R.C. 5713.03 that "[i]n determining the true value of any tract, lot, or parcel of real estate under this section, if such tract, lot, or parcel has been the subject of an arm's length sale between a willing seller and a willing buyer within a reasonable length of time, either before or after the tax lien date, the auditor shall consider the sale price of such tract, lot, or parcel to be the true value for taxation purposes." Am.Sub.H.B. No. 920, 136 Ohio Laws 3182, 3247.

{¶ 24} The primacy of the sale price mandated by the statute and endorsed in *Park Inv. Co.* and *Berea* simply cannot be reconciled with the contention that an actual sale price must be adjusted because the legal fee interest is subject to encumbrances. Because the legal fee interest in real property is so often subject

---

3. Although the BOE does not press this point in its brief, paragraph one of the notice of appeal raises the issue.

to some type of encumbrance, one could as a practical matter rarely utilize the sale price to determine value if the fee interest had to be valued as though the encumbrances did not exist.

{¶ 25} Finally, our decision in this case does not raise a constitutional uniformity issue, and to the extent we expressed a contrary holding in *New Winchester*, we overrule it. Quite simply, the uniform rule is that property should be valued in accordance with an actual sale price where the criteria of the recency and the arm's-length character of the sale are satisfied. Where there is no such sale, the uniform rule envisions that an appraisal will be prepared, and constitutional uniformity does not prohibit the differential treatment of encumbrances when property is being appraised in materially different contexts.

{¶ 26} For example, the appraisal of subsidized housing in *Alliance Towers*, 37 Ohio St.3d 16, 523 N.E.2d 826, raised the issue of how government subsidies affected the value of the realty, and how prospective buyers would view the subsidy in determining what they would be willing to pay for the property. In *Muirfield*, 73 Ohio St.3d 710, 654 N.E.2d 110, a parcel owned by an association of property owners was subject to easements owned by those same property owners. Arriving at an appraised value of such a parcel presented significant challenges, given the common ownership and the easements, and the manner in which the surrounding owners currently realized the value of the parcel at issue through those easements. But no such complexity afflicts a case like the present one; here, a recent sale was presented, and no evidence impugned its arm's-length character. The sale price in such a situation becomes the measure of the value of the property.

## C

{¶ 27} Perhaps the most significant flaw in the BOE's argument lies in the failure to recognize that encumbering property typically represents an owner's attempt to realize the full value of the property. The mall developer in *Berea*, for example, had exercised business judgment 20 or more years before the tax year when it entered into long-term leases with certain terms. As it happened, the rent paid under those leases might appear to be below market 20 years later, but that does not mean the tax assessor is required to second-guess the earlier exercise of business judgment.

{¶ 28} Even more directly relevant to this case is the example of a residential developer creating a new subdivision. Such a developer may write restrictions into the deeds of all lots within the new subdivision, and in doing so, the developer intends to optimize value for all the landowners in the development. When each lot is sold, it is subject to the deed restrictions; but the arm's-length sale price of the lot reflects its value, and no adjustment for the deed restrictions would be appropriate.

{¶ 29} The matter of business judgment received extensive discussion by the Wisconsin Supreme Court in a well-reasoned opinion. In *Darcel, Inc. v. Manitowoc Bd. of Review* (1987), 137 Wis.2d 623, 405 N.W.2d 344, the court addressed the question whether a January 1, 1984 tax assessment ought to be based on an arm's-length sale in August 1983. In August, all shares of Darcel, Inc. were sold. Darcel's sole asset was the shopping mall whose value was at issue in the case. The mall was subject to long-term leases entered into at fair market rates in 1968. The taxing authority sought to value the mall based upon current market rent, which exceeded the contract rent under the long-term leases and which generated a value that exceeded the August 1983 sale price. The owner objected and prevailed below. Wisconsin's highest court affirmed the use of the sale price to determine the value of the property, observing that the presence of long-term leaseholders "may give stability to a mall" such that "the mall itself might never have begun construction or started as a business entity"; had that occurred, the taxing district "never would have had the mall within its tax base." *Darcel*, 137 Wis.2d at 639–640, 405 N.W.2d 344.

{¶ 30} According to the Wisconsin court, the legitimate question raised by encumbrances is whether agreements creating those encumbrances themselves were entered into at arm's length. The court stated that "the sale price should be conclusive of market price unless there is evidence that the leases themselves were not entered into at arms-length and in good faith. Sale-leaseback situations, for instance, may be undertaken with terms to avoid property tax and might not be entered at arms-length." Id. at 631, 405 N.W.2d 344. Accord *S. Euclid/Lyndhurst Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision* (1996), 74 Ohio St.3d 314, 317, 658 N.E.2d 750 (in a sale-leaseback situation, "a willing buyer would pay less for a property if the leaseback arrangement limited the amount of rent the buyer could collect"). Ultimately, such a situation presents an issue of the arm's-length character of the transaction, and *Berea* does not stand in the way of such an inquiry.[4]

{¶ 31} But the record of this case involves neither a sale-leaseback nor an otherwise collusive relationship between seller and buyer. Indeed, the BOE has never contended that the sale at issue was anything but an arm's-length transaction, and the BTA found that it was one. Thus, the deed restriction at issue was imposed in the context of the arm's-length sale. Nor was there any evidence that either the bank that sold the property or Cummins as purchaser was somehow

---

4. Consistent with *S. Euclid*, a sale-leaseback may not furnish an arm's-length sale price. Namely, even if the contract as a whole is entered into at arm's length, the existence of a sale element and a leaseback element in the same contract may deprive both of those elements of their arm's-length character, because the existence of the one element makes the otherwise unrelated parties related with respect to the other element.

not acting as a typically motivated participant in the market place. At the BTA hearing, Mr. Cummins testified that the restriction made no difference to his calculations in purchasing the property. We understand that statement to mean that the restriction affected neither his own intended use of the property nor the prospect that he could resell it in the open market if need be and obtain an acceptable price.

{¶ 32} Accordingly, *Berea* controls the present case, and we reject the BOE's contention that the existence of the deed restriction rendered the sale price not indicative of the true value of the property.

## D

{¶ 33} In its decision, the BTA compared the deed restriction to "a sale-leaseback or special financing, which the Supreme Court has determined does not prevent the sale price from being competent and probative of value." The foregoing discussion shows that contrary to the BTA's assertion, there may be situations in which a sale price derived from a sale-leaseback might not reflect true value. Nonetheless, the BTA's ultimate conclusion correctly applies *Berea* by regarding the sale price as determinative of value.

## IV

{¶ 34} The BOE's other main argument concerns the building permit and the renovation of the property. The BOE contends that the evidence in the record shows that the property was a different one on the tax lien date from what was purchased a little over four months previously, or, at a minimum, that the evidence was sufficient to place a burden on the property owner to show that the property was not so different as to affect its value. We now examine these contentions.

## A

{¶ 35} R.C. 5713.03 contains two provisions that are relevant to the issue. First, the arm's-length sale price is to be utilized to determine true value, but only if the sale was "within a reasonable length of time, either before or after the tax lien date." The reasonableness of the length of time—sometimes expressed as whether the sale was "recent" relative to the tax lien date—encompasses all factors that would, by changing with the passage of time, affect the value of the property. As we have previously held, general developments in the marketplace are relevant. See *New Winchester Gardens*, 80 Ohio St.3d at 44, 684 N.E.2d 312 (one factor in determining reasonableness is "consideration of changes that have occurred in the market"). Also relevant are those conditions that are specific to the property itself. *Deane v. Miami Cty. Bd. of Revision* (Dec. 12, 2003), B.T.A. No. 2003–N–560 (combination of improvements made between sale and tax lien

date and passage of 47 months made sale not "recent"); *M.H. Murphy Dev. Co. v. Franklin Cty. Bd. of Revision* (Dec. 3, 2004), B.T.A. No. 2003–R–1177 (documented changes in zoning and construction made sale price unreliable). It follows that, with respect to the standard of reasonableness under the statute, the BOE's allegation that the property had been improved could affect the validity of using the sale price.

{¶ 36} Additionally, R.C. 5713.03 specifically provides that the sale price should not be considered the true value of the property if either of the following conditions occurs subsequent to the sale: (i) "[t]he tract, lot, or parcel of real estate loses value due to some casualty" or (ii) "[a]n improvement is added to the property." Cummins's renovations raise the question whether an "improvement" was "added" to the property between the sale and the tax lien date.

**B**

{¶ 37} We first address whether the record demonstrates that an "improvement" was "added" that would make it inappropriate to utilize the sale price in determining value. The property record card reflects $120,000 of building permits obtained·in October 2002, a time between the sale and the tax lien date. Other than that, the only evidence on point consists of the cross-examination of Mr. Cummins at the hearing.

{¶ 38} The BTA found this evidence inconclusive, in that it failed to "definitively establish when [removal of the bank vault] took place" and fell short of showing "when any other modifications to the building were accomplished and at what cost." The BTA's evaluation of the evidence typically merits our deference, and we see no reason as a matter of law to disturb the BTA's conclusion in this case.

{¶ 39} Accordingly, the evidence failed to show an "improvement" being "added" to the property, nor did it otherwise demonstrate that the length of time that elapsed between the sale and the lien date was not reasonable under the statute.

**C**

{¶ 40} Our discussion of the state of the evidence does not end the analysis. The BOE contends that Cummins as owner and as proponent of using the sale price had a burden to make a definitive showing that its renovation of the building had not changed the value of the property by the tax lien date. According to this argument, even if the evidence in the record did not establish that an "improvement" was "added," the evidence at least sufficed to place a burden on Cummins to show that no improvement was added by the tax lien date. We disagree.

{¶ 41} In *Cincinnati School Dist. Bd. of Edn. v. Hamilton Cty. Bd. of Revision* (1997), 78 Ohio St.3d 325, 327, 677 N.E.2d 1197, we held that "a rebuttable presumption exists that the sale has met all the requirements that characterize true value." The initial burden on a party presenting evidence of a sale is not a heavy one, where the sale on its face appears to be recent and at arm's length. Were we to require a definitive showing by the proponent that no evidence controverted the recency and arm's-length character of the sale, then most cases involving a sale price would require the proponent to introduce appraisals and other extrinsic evidence showing the *absence* of any reason *not* to use the sale price to determine value. We believe that such a requirement would defeat the legislative purpose of R.C. 5713.03, which is to promote the use of the recent sale to determine the value of the property and thereby minimize the need for other evidence when a recent sale price is available.

{¶ 42} Additionally, the structure of the statute supports our conclusion in this case. The legislature deliberately composed the statute in a manner that first recognizes a general rule concerning the use of the sale price to determine value, and then makes the addition of an improvement an exception to that general rule. See *In re Estate of Roberts* (2002), 94 Ohio St.3d 311, 314–315, 762 N.E.2d 1001 (language of subsequent paragraph of statute stated exclusions from the broad general rule stated in the first paragraph); *H.R. Options, Inc. v. Zaino*, 100 Ohio St.3d 373, 2004-Ohio-1, 800 N.E.2d 740, ¶ 15 (statute stated general rule and then set forth four "exclusions" from that general rule). In this case, presenting an August 2002 sale that appeared to be at arm's length satisfied the initial burden of invoking R.C. 5713.03, and the burden lay on the opponent to show that the condition set forth at division (B) was present. Since neither the BOE nor the county proved the addition of an improvement by the tax lien date, the BTA properly used the sale price to determine value.

{¶ 43} The BOE strenuously argues that the burden of proof should be placed upon Cummins because Mr. Cummins was "[t]he only party at the BTA who had any idea of the exact condition of [the] property." We find no merit in this assertion. Other than the reference to the building permit on the property record card, the BTA had no documentation before it of the changes to the property, yet this information would have been available to the auditor, the BOR, and the BOE. By law, county auditors receive notice of all construction that exceeds two thousand dollars. R.C. 5713.17. Also, the law requires county auditors to include such information on property record cards and consult it when valuing the property. Ohio Adm.Code 5703–25–09 and 5703–25–09(D)(23). Ohio's municipalities require building permits for improvements; in this case, the city of Columbus imposed the general requirement for a building permit, Columbus City Code 4113.37(B)(1), and also required issuance of a certificate of occupancy when the work was done. Columbus City Code 4117.06. The BOE

could have obtained this documentation and submitted it to the BTA, but failed to do so.

{¶ 44} Furthermore, at the BTA the BOE utilized discovery only to obtain disclosure of Cummins's hearing witnesses and exhibits. The BTA rules permit the BOE to obtain specific discovery with respect to the state of improvements to the property and to subpoena persons and documents to the hearing. Ohio Adm.Code 5717–1–11(A) and 5717–1–13(A).

{¶ 45} Under all these circumstances, we decline to place the burden of showing a negative—the fact of *not* adding an improvement—on the party that proposes to use a recent sale price to determine value. Instead, the burden lay where the BTA placed it: the parties opposing the use of the sale price had to show that an improvement had been added to the property as of the tax lien date.

# V

{¶ 46} For all the reasons set forth in this opinion, we conclude that the BTA acted reasonably and lawfully in using the sale price to determine the value of the property. The BTA also correctly declined to honor Cummins's attempt to allocate $300,000 of the $385,000 sale price to the property, because Cummins failed to show the propriety of the allocation. See *St. Bernard Self-Storage, L.L.C. v. Hamilton Cty. Bd. of Revision*, 115 Ohio St.3d 365, 2007-Ohio-5249, 875 N.E.2d 85, ¶ 19. We therefore affirm the decision of the BTA.

Decision affirmed.

MOYER, C.J., and LUNDBERG STRATTON, O'CONNOR, and O'DONNELL, JJ., concur.

PFEIFER and LANZINGER, JJ., concur in judgment only.

---

Wayne E. Petkovic, for appellee Cummins Property Services, L.L.C.

Rich, Crites & Dittmer, L.L.C., Mark H. Gillis, and Jeffrey A. Rich, for appellant.