Kennedy, J.,
concurring.
{¶ 31} I concur fully in the majority’s opinion. I write separately to explain why I believe that the dissent is mistaken.
The majority’s 24-month rule best harmonizes the judicially created presumption of recency with the reappraisal duties of the county assessor
{¶ 32} The issue presented here arises because of statutory duties of the county’s tax assessor that are potentially in tension with one another. (That official is the “auditor” in some counties and the “fiscal officer” in others; I will use the term “assessor.”) In this case, the Akron City School District Board of Education (“BOE”) relies on former R.C. 5713.03, which provided that if a parcel of real estate “has been the subject of an arm’s length sale between a willing seller and a willing buyer within a reasonable length of time, either before or after the tax lien date, the auditor shall consider the sale price * * * to be the true value for taxation purposes.” (Emphasis added.) 140 Ohio Laws, Part II, 2722. On the other hand, “the auditor shall view and appraise or cause to be viewed and appraised at its true value in money, each lot or parcel of real estate * * * at least once in each six-year period * * R.C. 5713.01(B); see also R.C. 5715.33 (tax commissioner to order sexennial reappraisal of property for tax purposes). Thus, under former R.C. 5713.03, the assessor was under a duty to adopt the price from a recent, arm’s-length sale as the property’s value based on finding that the sale is voluntary, recent, and at arm’s length; that official is also under a duty to view and appraise or reappraise the property on a six-year schedule. Here the fiscal officer of Summit County performed a reappraisal for tax year 2008 and arrived at a significantly lower value than the earlier sale price.
{¶ 33} I concur in the majority’s discussion concerning the assessor’s statutory duties. In addition to reviewing the sale price of the property at issue, the reappraisal requires “consideration of all facts tending to indicate current or fair market value.” Ohio Adm.Code 5703-25-06(A). The assessor hires expert consultants to carry out a detailed plan approved by the state tax commissioner. Ohio Adm.Code 5703-25-08(A) (requiring auditors to “appoint and employ the experts, deputies, clerks or other employees as the auditor deems necessary”); 5703-25-08(B) (requiring a detailed plan approved by the commissioner). Those consultants typically conduct a “mass appraisal,” which involves sophisticated techniques to perform a county-wide valuation of all parcels of real estate. See Internatl. Assn. of Assessing Officers, Property Assessment Valuation 285 (2d *101 Ed. 1996) (“Mass appraisal is the systematic appraisal of groups of properties as of a given date using standardized procedures and statistical testing,” and it “requires the development of a valuation model capable of replicating the forces of supply and demand over a large area”); see also Ohio Adm.Code 5703-25-06(E).
{¶ 34} Given this statutory and regulatory framework, the determination of the recency of a sale price during the reappraisal lies in the first instance within the assessor’s discretion. But if an owner or a board of education is aggrieved by the reappraisal value, a complaint may be filed pursuant to R.C. 5715.19. In the proceeding initiated by that complaint, the board of revision hears evidence and determines value. Id.
{¶ 35} It is in that context — the filing and hearing of a valuation complaint— that a sale price is or is not presumed to be recent to the tax-lien date. Neither the former nor the current version of R.C. 5713.03 calls for a presumption, but the court has adopted the presumption as an appropriate procedural measure to achieve the legislative aim of the statute: that a sale price be adopted as the property value whenever appropriate. See Cummins Property Servs., L.L.C. v. Franklin Cty. Bd. of Revision, 117 Ohio St.3d 516, 2008-Ohio-1473, 885 N.E.2d 222, ¶ 41 (requiring the proponent of adopting the sale price to demonstrate the recency and arm’s-length character of the sale price “would defeat the legislative purpose of R.C. 5713.03, which is to promote the use of the recent sale * * * and thereby minimize the need for other evidence when a recent sale price is available”).
{¶ 36} As salutary as the recency presumption generally is, we should be careful not to let R.C. 5713.03 conflict with the assessor’s duty to reappraise property every six years. The presumption is, after all, a judicial construct designed to carry a legislative intent into effect; the statutes do not themselves prescribe and define the presumption. Accordingly, we should limit the presumption when appropriate, and a 24-month limitation is appropriate here.
{¶ 37} Like the majority, I am concerned that if there is no limit, a recent reappraisal may always be challenged with a relatively stale sale price, and the burden would then be unduly thrown on those who support the reappraisal valuation. This is particularly disturbing under the present circumstances, where an owner is satisfied with a reappraisal valuation, but must shoulder the burden to furnish support for it merely because the board of education files a complaint based on a 29-month-old sale.
The Zell case does not militate against the 24-month rule adopted by the majority
{¶ 38} The dissent contests the majority’s assertion that our case law has not accorded a presumption of recency beyond 24 months. The dissent cites Zell v. *102 Hamilton Cty. Bd. of Revision, 78 Ohio St.3d 330, 677 N.E.2d 1201 (1997), and indeed the sale price in that case was adopted even though the sale occurred 29 months after the tax-lien date at issue.
{¶ 39} Although that case may have escaped the majority’s notice, and although the dissent rightly demands that we take it into account, close inspection reveals that Zell does not contradict the majority’s assertion that “[w]e have not accorded a presumption of recency to a sale that occurred more than 24 months before the lien date * * Majority opinion at ¶ 14. That is true both because the case does not rely on the presumption of recency and because it involves a sale long after, rather than before, the lien date.
{¶ 40} First, although $2.2 million was determined to be the property value in Zell, and although $2.2 million was the price in the sale that occurred 28 months after the tax-lien date, the presumption of recency was not decisive in either the court’s or the BTA’s decision. Tellingly, our decision in Zell makes no mention of recency, because the issue was apparently not raised on appeal. Instead, the only issues considered were whether the sale was at arm’s length and whether the sale involved duress. This irrelevance of recency as an issue on appeal is particularly clear when the Zell decision is read in light of the companion case, Cincinnati Bd. of Edn. v. Hamilton Cty. Bd. of Revision, 78 Ohio St.3d 325, 327-329, 677 N.E.2d 1197 (1997), which addresses the same property and the same sale price applied to a later tax year.
{¶ 41} To be sure, the BTA decision in Zell did determine that the sale 28 months after the lien date was recent, and we affirmed that decision. The BTA, finding that the sale was recent, disregarded the appraisals and relied on the sale price alone. But significantly, the BTA’s recency determination makes no mention of recency being presumed. Instead, the BTA noted that the property owner supported the use of the sale price with appraisal evidence, and the board expressly relied on affirmative evidence that the condition of the property on the sale date was similar to its condition on the tax-lien date. Zell v. Hamilton Cty. Bd. of Revision, BTA No. 94-N-27, 1996 WL 154479, at *3, 4 (Mar. 29, 1996). Thus, contrary to the dissent’s suggestion, neither the BTA decision nor the court’s ruling in Zell provides explicit support for presuming that a sale more than 24 months removed from the tax-lien date is recent.
{¶ 42} Second, the presumption of recency would arguably have been irrelevant in Zell in any event, because the property owner Sam Zell presented independent evidence that the property value on January 1, 1990, was $2.2 million. Namely, Zell offered the appraisal of Ronald P. Davis, who performed an income-capitalization approach and a comparable-sale approach and concluded that the property value was $2.2 million on January 1, 1990. 78 Ohio St.3d at 330, 677 N.E.2d 1201. Although the BTA disregarded the appraisals, including Davis’s, *103 the Davis appraisal did furnish independent evidence in support of a $2.2 million valuation. As we noted in Zell’s companion case, a “ ‘presumption is a procedural device which is resorted to only in the absence of evidence by the party in whose favor a presumption would otherwise operate.’ ” Cincinnati Bd. of Edn., 78 Ohio St.3d at 328, 677 N.E.2d 1197, quoting Ayers v. Woodard, 166 Ohio St. 138, 140 N.E.2d 401 (1957), paragraph three of the syllabus. Because Sam Zell had presented independent appraisal evidence of the property’s value as of January 1, 1990, the presumption of recency would not have been needed, absent a finding that the appraisal lacked credibility.
{¶ 43} Third, even if Zell had explicitly applied a recency presumption to a sale 29 months removed from the tax-lien date (which it did not), the case does not show that the majority is wrong to formulate the 24-month rule here. As I understand the majority opinion, the 24-month rule is very limited: it applies to a reappraisal year in which the assessor was aware of, but did not adopt, an earlier sale price. The reason for having a 24-month rule in such a case is that the earlier sale was already taken into account, but found not to be probative because of a perceived change in the market. Accordingly, the 24-month rule does not necessarily apply to a sale that occurs after the lien date of the reappraisal year, because a sale that occurs many months after the reappraisal and the lien date cannot have been taken into account in the reappraisal. Arguably, a later sale constitutes brand new evidence that might call for reconsidering the question of value for the past year.
{¶ 44} For all the stated reasons, I concur with the majority that a sale should not be presumed to be recent when it occurred more than 24 months before the tax-lien date of a reappraisal year when the assessor knew of the sale but chose not to adopt the sale price as the property value. I also agree with the majority’s decision to remand for further proceedings.